STEPHEN R. HARRIS, ESQ.
Nevada Bar No. 001463
HARRIS LAW PRACTICE LLC
6151 Lakeside Drive, Suite 2100
Reno, NV 89511
Telephone: (775) 786-7600
Facsimile: (775) 786-7764
E-Mail: steve@harrislawreno.com
Attorney for W. Donald Gieseke, Trustee

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEVADA

* * * * *

IN RE:

DORA DOG PROPERTIES, LLC

☐ AFFECTS THIS DEBTOR

☐ AFFECTS DOG BLUE PROPERTIES, LLC

☐ AFFECTS BRANDY BOY PROPERTIES, LLC

☐ AFFECTS 475 CHANNEL ROAD, LLC

☐ AFFECTS PARK ROAD, LLC

☐ AFFECTS 140 MASON CIRCLE, LLC

☒ AFFECTS ALL DEBTORS.

_____/

CASE NO. BK-19-50103-gs
(Chapter 7)

Jointly Administered with:

| 19-50104-gs | Dog Blue Properties, LLC |
| 19-50105-gs | Brandy Boy Properties, LLC |
| 19-50106-gs | 475 Channel Road, LLC |
| 19-50108-gs | Park Road, LLC |
| 19-50109-gs | 140 Mason Circle, LLC |

**MOTION FOR ORDER APPROVING SETTLEMENT OF DC SOLAR ESTATES AND FUNDS/INVESTORS' CLAIMS AGAINST REAL PROPERTY DEBTOR ESTATES PURSUANT TO FRBP 9019**

Hearing Date: May 5, 2022
Hearing Time: 3:00 p.m.
Est. Time: 15 minutes
Set By: Calendar Clerk

W. Donald Gieseke, the duly appointed and acting trustee ("Trustee Gieseke") for the jointly administered chapter 7 estates of Dora Dog Properties, LLC ("Dora Dog"), Dog Blue Properties, LLC ("Dog Blue"), Brandy Boy Properties, LLC ("Brandy Boy"), 475 Channel Road, LLC ("Channel Road"), Park Road, LLC ("Park Road"), and 140 Mason Circle, LLC ("Mason") (collectively, the "***Real Property Debtors***" or "***Real Property Entities***") Lead Case no. 19-50103-

gs, files his **MOTION FOR ORDER APPROVING SETTLEMENT OF DC SOLAR ESTATES AND FUNDS/INVESTORS' CLAIMS AGAINST REAL PROPERTY DEBTOR ESTATES PURSUANT TO FRBP 9019 ("Motion"),** in order to approve a compromise and settlement with Christina Lovato, the duly appointed and acting trustee ("*Trustee Lovato*") for the substantively consolidated chapter 7 estates of DC Solar Solutions, Inc. ("*Solutions*"), DC Solar Distribution, Inc. ("*Distribution*"), DC Solar Freedom, Inc. ("*Freedom*," and together with Solutions and Distribution, "*DC Solar*") and Double Jump, Inc. ("*DJ*," and together with DC Solar, the "*DC Solar Estate*"), in conjunction with the Receivership Funds and the Investors, both as defined hereinafter.

The Motion is supported by the separately filed Declaration of W. Donald Gieseke ("Gieseke Declaration") and is based on FRBP 9019. As permitted by F.R.E. 201, the Trustee requests that the Court take judicial notice of the Court papers and pleadings on file in the Real Property Debtors' cases and the DC Solar Estate.

## FACTUAL BACKGROUND

**A. General Background**

1. Prepetition, DC Solar was engaged in a business related to manufacturing, marketing, selling and leasing mobile solar generators.

2. However, certain of DC Solar's insiders, including Jeff Carpoff and Paulette Carpoff ("*Carpoffs*"), were also perpetrating a Ponzi scheme ("*Carpoff Ponzi Scheme*").[1]

3. On December 18, 2018, federal law enforcement raided DC Solar's business locations ("*Raid*") effectively closing down DC Solar's operations.

4. In late January and early February 2019, the Debtors, including the four (4) DC Solar Estate cases and the six (6) Real Property Debtors, each filed for chapter 11 relief with this Court, commencing these ten (10) bankruptcy cases ("*Bankruptcy Cases*").

---

[1] *See generally, e.g., U.S.A. v. Carpoff*, Case No. 20-00017 (E.D.Ca.) [ECF No. 10]; Double Jump, Inc. Lead Bankruptcy Case No. 19-50102, ECF No. 106-2.

5. On March 22, 2019, the Court converted the Bankruptcy Cases to cases under chapter 7 and appointed Trustee Lovato to administer the DC Solar estates.[2] Trustee Gieseke was appointed to administer the Real Property Debtors' estates.

### B. The Trustee's Investigation

6. Following his appointment, the Trustee Gieseke engaged in a broad investigation related to the Real Estate Debtors' pre-petition activities. In his investigation, Trustee Gieseke found that, over the course of many years prior to the Raid, the Carpoffs had systematically transferred significant sums of money from Solutions to themselves and to the Real Property Entities. At the time of the Raid, the Real Property Entities owned more than 20 real property assets located in California, Nevada, Texas and Mexico. Most of the real properties were forfeited to the United States and others were available for Trustee Gieseke to administer. As a result of Trustee Gieseke administering the assets available in the Real Estate Debtors, approximately $12,500,000.00 is on deposit for distribution to allowed creditors' claims in the Real Estate Debtor cases, with additional monies expected.

7. In October 2019, Trustee Lovato filed proofs of claim in the respective Real Property Debtor cases as follows:

| | | |
|---|---|---|
| Solutions to Dora Dog | $ 5,028,624.87 | Claim 23 |
| Solutions to Dog Blue | $13,921,974.38 | Claim 14 |
| Solutions to Brandy Boy | $ 1,954,208.48 | Claim 7 |
| Solutions to 475 Channel | $    815,000.00 | Claim 3 |
| Solutions to Park Road | $ 6,654,212.07 | Claim 3 |
| Solutions to 140 Mason | $ 1,587,278.74 | Claim 3 |
| **Total** | **$29,961,298.54** | |

On June 22, 2021, Trustee Lovato filed amendments to the above referenced filed proofs of claims, with the indicated claim amounts remaining the same.

---

[2] ECF Nos. 439-40.

8.  Subsequently, the Funds and the Investors, as defined below, filed claims in the Real Property Debtor cases in amounts exceeding $2 billion.

### C. The Fund And Investor Claims In The Real Property Cases

9.  Two previous settlement agreements approved by the Court are integral to this Settlement Agreement.

**Global Settlement Agreement**

10. In early 2021, Trustee Lovato filed her Motion For Order Approving Compromise And Settlement Agreement And Award Of Contingency Fee ("Global Settlement Motion"). In March 2021, the Court entered its Order approving the Global Settlement Motion. **[Case no. 19-50102-gs, ECF Nos. 2482 and 2614].** Among other things, the Global Settlement Motion resulted in the Funds[3] collectively holding allowed unsecured claims in the DC Solar Estate in the approximate amount of $336,000,000.

11. In addition, as part of the Global Settlement Motion, the Investors[4] have allowed unsecured claims in the amount of $265,000,000; however, the Investors will not receive any distribution from the DC Solar Estate.

**Antioch Mini Storage Settlement Agreement**

12. In 2021, Trustee Lovato filed three adversary proceedings, the subject of which was the Antioch Mini-Storage, LLC ("AMS") owned and controlled directly or indirectly by the Carpoffs or persons related to the Carpoffs. <u>Trustee Lovato v. Matthew Carpoff and Lauren Carpoff</u>, Adv. No. 21-05031, <u>Trustee Lovato v. Paula Jordan</u>, Adv. No. 21-05032 and <u>Trustee</u>

---

[3] Funds are defined as Solar Eclipse Investment Funds ("**SEIF**") III, LLC; SEIF IV, LLC; SEIF V, LLC; SEIF VI, LLC; SEIF X, LLC; SEIF XI, LLC; SEIF XII, LLC; SEIF XV, LLC; SEIF XVI, LLC; SEIFXVII, LLC; SEIF XVIII, LLC; SEIF XIX, LLC; SEIF XXI, LLC; SEIF XXII, LLC; SEIF XXIII,LLC; SEIF XXIV, LLC; SEIF XXVI, LLC; SEIF XXVIII, LLC; SEIF XXIX, LLC; SEIF XXX,LLC; SEIF XXXI, LLC; SEIF XXXIII, LLC; and SEIF XXXIV, LLC (together, the "**Receivership Funds**"), **acting by and through Receiver Neil Luria;**
**(2)** SEIF Fund VII, LLC, SEIF Fund XIV, LLC, SEIF Fund XXXII, LLC and SEIF Fund XXXV LLC, SEIF Fund VIII and SEIF Fund XXVII (together, the "**East West Bank/ADHI Funds**"), **acting by and through their Manager, Curtis Jung** (collectively, the "Funds").
[4] The Investors are Progressive Casualty Insurance Company, The Sherwin-Williams Company, Geico Corporation, People's United Bank, N.A., People's United Financial, Inc., DV VNB Community Renewables Fund LLC, DV VNB Community Renewables Fund III LLC, and Pardee Solar 1, LLC (collectively the "**Investors**").

Lovato v..Lone Oak Fund, LLC, Adv. No. 21-05034.  Trustee Lovato and the Defendants in these three adversary proceedings agreed to participate in a settlement conference with Joan Wright, Esq. acting as the mediator.  As a result, all three of the matters were resolved and the settlement agreement between and among all the parties was approved by the Court. **[See case no. 19-50102, ECF Nos. 3040, 3041 and 3079]**. These three adversary proceedings related directly with the adversary proceeding filed by Trustee Gieseke against the Carpoffs. Trustee Gieseke v. Antioch Mini Storage LLC, a California limited liability company, Jeff Carpoff, Paulette Carpoff, Lauren Carpoff and Matthew Carpoff, Adv. No. 21-05015, wherein Trustee Gieseke sought to recover the Antioch Mini Storage complex from the Carpoffs.  Subsequent to the filing, Trustee Gieseke was successful in recovering the Antioch Mini Storage complex for the benefit of the Dora Dog estate, with Trustee Lovato and Trustee Gieseke agreeing to a compromise and settlement with respect to the proceeds arising from the liquidation of the Antioch Mini Storage complex on behalf of their respective estates.  *See Order Granting Plaintiff's Motion for Order Approving Compromise and Settlement with Antioch Mini Storage, LLC, Jeff Carpoff, Paulette Carpoff, Lauren Carpoff, Matthew Carpoff, Trustee Christina Lovato, Paula Jordan, and Lone Oak Fund, LLC* (Case No. 19-50103, ECF No. 625).

**Real Property Cases Claims Dispute**

13. Informal settlement discussions were had with respect to the magnitude of the claims asserted by the Funds and Investors in the Real Property Debtor cases.  Trustee Lovato contended that the Funds and the Investors did not have direct claims against the Real Estate Cases.  The Funds and the Investors asserted that they would be able to establish the legal basis for their direct claims against the Real Estate cases. Trustee Lovato, Trustee Gieseke and the Funds/Investors agreed to participate in a settlement conference with Judge Natalie Cox acting as the settlement Judge. Several settlement conferences were held and ultimately a settlement was

reached on February 28, 2022, subject to final Court approval.

## SETTLEMENT AGREEMENT

The current Settlement Agreement is attached to the Gieseke Declaration as **Exhibit A**. Importantly, the Antioch Mini-Storage settlement is part and parcel of the current Settlement Agreement. From the eventual sale of the Antioch Mini-Storage by Trustee Gieseke, Trustee Lovato on behalf of the DC Solar Estate will receive $3 million plus 50% of the net sale proceeds over $4 million with a total not to exceed $4.2 million from that transaction. In addition, Trustee Lovato will receive an additional $1 million distribution from the Real Estate Debtor cases.

Based upon the magnitude of the claims asserted by Funds in the Real Estate Debtor cases, Trustee Lovato's total claims of approximately $30 million represent only a fraction of the total claims filed by the Funds/Investors in the Real Property Debtors. The proposed settlement provides certainty to the DC Solar Estate and avoids the risks and costs of potential litigation on the main question of whether the Funds have direct claims against the Real Estate Debtor cases. In the exercise of his business judgment, Trustee Gieseke believes the terms of the Settlement Agreement meet the standards set forth in *In re A& C Properties, Inc.* and is in the best interest of the Real Property Debtors.

## DISCUSSION

F.R.Bankr.P. 9019(a) provides in relevant part that "[o]n motion ... and after notice and a hearing, the court may approve a compromise or settlement." In the Ninth Circuit, motions to approve a compromise and settlement agreement are reviewed under the four criteria set forth in *In re A&C Properties, Inc*., 784 F. 2d 1377, 1381 (9th Cir. 1986), cert. denied, 479 U.S. 854 (1986). Those criteria are: (1) likelihood of success on merits of the claims in the underlying litigation; (2) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (3) the difficulties, if any, to be encountered in the matter of collection; and (4) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

Compromises are favored under the Bankruptcy Code, and approval of a compromise rests in the sound discretion of the Court. Protective Committee for Independent Stockholders of *TMT*

*Trailer Ferry, Inc., v. Anderson*, 390 U.S. 414, 424 (1968). The bankruptcy court is afforded wide latitude in approving compromise agreements which it determines to be fair, reasonable, and adequate. *In re Woodson*, 839 F.2d 610 (9th Cir. 1988). The court need not conduct an exhaustive investigation into the claim sought to be compromised. *In re Walsh Construction, Inc.*, 699 F.2d 1325, 1328 (9th Cir. 1982).

### *A&C PROPERTIES* FACTORS

(1) Likelihood of success on merits of the claims in the underlying litigation with due consideration for the uncertainty in fact and law, and (2) The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it will be discussed together.

When Trustee Lovato filed her claims in the Real Estate Cases, she provided a schedule of the dates, and amounts, of the transfers by Solutions to the Carpoffs and the entities which eventually became debtors. The transfers totaled approximately $30 million. No objections to the claims were filed by Trustee Gieseke or any other party.

When the Funds filed their claims in the Real Property Cases, the dollar amounts of their claims were based upon the claims that had been filed in the DC Solar cases. Exhibits to the claims set forth the legal theories which supported recovery against the Carpoff owned entities now designated as the Real Property Debtors. The following theories were listed: Imposition of a constructive trust; Unjust enrichment; Quantum meruit; Vicarious liability from civil conspiracy; Conversion; Aiding and abetting fraud; Tortious interference; Civil RICO; Fraud; Negligent misrepresentation and Imposition of equitable liens.

Initially, Trustee Lovato asserted that she had exclusive authority to pursue the actual funds transferred to the Real Estate Entities through straightforward theories of avoidance under 11 U.S.C. § 544, 548 and 550 and NRS 112.010 et seq.[5] The conflicting legal theories of Trustee Lovato and the Funds held the prospect of complex, lengthy and expensive litigation, which Trustee Gieseke estimates at over $1,000,000.00 in legal fees alone.

---

[5] *Branch Banking and Trust Co. v. R&S St. Rose Lenders, LLC* (In re R&S St. Rose, LLC), 2019 U.S. Dist. Nev. LEXIS 168395, 2019 WL 4773812; *In re Curry and Sorensen, Inc.*, 57 B.R. 824, 828 (9th Cir. BAP 1986).

Harris Law Practice LLC
6151 Lakeside Drive
Suite 2100
Reno, Nevada 89511
(775) 786 7600

7

In conjunction with analysis under *A&C Properties* factors (1) and (2) Trustee Lovato necessarily also considered the relative magnitudes of the claims involved.[6] For example, if after liquidation of all assets Trustee Gieseke has a net $12.5 million available for distribution; the Funds have allowed claims of $667,676,527, and Trustee Lovato's claims total $30 million, the distribution to Trustee Lovato would be nearly .017934 percent, or $224,175.00. This number would be further reduced by the cost of litigation to the DC Solar Estate and the potential delay of resolution pending appeal(s).

Predicting the outcome of litigation under this scenario is always problematic; however, Trustee Gieseke has taken a conservative view of his risk in determining to settle based upon his analysis of the facts and the risk of litigation to the Real Property Debtors. Most persuasive to Trustee Gieseke in settling is that Trustee Lovato has agreed to accept the settlement amount of $1,000,000 for the DC Solar Estate. Additionally, the Funds have agreed to accept the net amount available after Trustee Gieseke pays the allowed administrative claims and up to $500,000 for allowed pre-petition claims and the administrative claim of Clark Hill. With this allocation of funds, Trustee Gieseke has no reason to object to the claims of the Funds.

(3) The difficulties, if any, to be encountered in the matter of collection. Here, Trustee Gieseke will be holding net liquidation proceeds in the form of cash and collectability will not be an issue. The problem addressed in the Settlement Agreement is the amounts to be distributed to creditors holding allowed claims.

(4) The paramount interest of the creditors and a proper deference to their reasonable views in the premises. The Motion will be noticed to all creditors and parties-in-interest. If an objection is raised, the Trustee will address any issues in his Reply. However, as noted above, based upon the magnitude of the claims asserted by the Funds and the potential cost of litigation, Trustee Gieseke believes the Settlement to be fair and avoids any downside risk of litigation.

---

[6] An additional factor affecting all parties involves whether the Real Property Debtors will, or will not, be substantively consolidated. In fact, Trustee Gieseke has decided not to request substantive consolidation of the Real Property Debtors for a third time, given his first and second requests for substantive consolidation having been rejected by the Court.

## CONCLUSION

Based upon the foregoing, Trustee Gieseke requests an Order approving the Settlement Agreement attached to his Declaration as Exhibit A and authorizing him to take such steps as are necessary to implement the terms of the Settlement Agreement.

Respectfully submitted this 7th day of April 2022.

STEPHEN R. HARRIS, ESQ.
HARRIS LAW PRACTICE LLC

/s/ Stephen R. Harris
_____
Attorney for W. Donald Gieseke, Trustee