1  STEPHEN R. HARRIS, ESQ.
   Nevada Bar No. 001463
2  HARRIS LAW PRACTICE LLC
3  6151 Lakeside Drive, Suite 2100
   Reno, NV 89511
4  Telephone: (775) 786-7600
   email: steve@harrislawreno.com
5  Attorney for W. Donald Gieseke, Trustee

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

\*\*\*\*\*

IN RE:

DORA DOG PROPERTIES, LLC

☒ AFFECTS THIS DEBTOR

☐ AFFECTS DOG BLUE PROPERTIES, LLC

☐ AFFECTS BRANDY BOY PROPERTIES, LLC

☐ AFFECTS 475 CHANNEL ROAD, LLC

☐ AFFECTS PARK ROAD, LLC

☐ AFFECTS 140 MASON CIRCLE, LLC

☐ AFFECTS ALL DEBTORS.

CASE NO. BK-19-50103-gs
(Chapter 7)

Jointly Administered with:

| 19-50104-gs | Dog Blue Properties, LLC |
| 19-50105-gs | Brandy Boy Properties, LLC |
| 19-50106-gs | 475 Channel Road, LLC |
| 19-50108-gs | Park Road, LLC |
| 19-50109-gs | 140 Mason Circle, LLC |

**APPLICATION FOR EX PARTE ORDER AUTHORIZING TRUSTEE TO EMPLOY REAL ESTATE BROKER**
**[FIRST REPUBLIC REAL ESTATE]**

Hrg. Date: N/A
Hrg. Time:
Est. Time:
Set by:

   W. Donald Gieseke, Trustee for the Chapter 7 bankrupt estates of six (6) Jointly Administered Debtors, specifically, DORA DOG PROPERTIES, LLC ("Dora Dog"); DOG BLUE PROPERTIES, LLC ("Dog Blue"); BRANDY BOY PROPERTIES, LLC ("Brandy Boy"); 475 CHANNEL ROAD, LLC ("475 Channel Road"); PARK ROAD, LLC ("Park Road"); and 140 MASON CIRCLE, LLC ("140 Mason Circle"); by and through his counsel STEPHEN R. HARRIS, ESQ. of HARRIS LAW PRACTICE LLC, hereby moves this Court for the entry of

1

an Order authorizing him to employ an exclusive real estate broker to market and sell certain real property owned by Dora Dog Property, LLC, pursuant to 11 U.S.C. §327(a), and alleges as follows:

1. Debtor DORA DOG PROPERTIES, LLC; Debtor DOG BLUE PROPERTIES, LLC; Debtor BRANDY BOY PROPERTIES, LLC; Debtor 475 CHANNEL ROAD, LLC; Debtor PARK ROAD, LLC; and Debtor 140 MASON CIRCLE, LLC; each filed Chapter 11 Petitions on January 30, 2019 ("Petition Date"). On March 22, 2019, this Court entered its Order converting the cases to Chapter 7 proceedings, and on March 22, 2019, W. Donald Gieseke was duly appointed as the Chapter 7 interim trustee ("Trustee") for six (6) of ten (10) jointly administered cases (Case Nos. 19-50103; 19-50104; 19-50105; 19-50106; 19-50108; and 19-50109) (collectively the "Real Estate Debtors"). Pursuant to an ORDER APPROVING TRUSTEE'S EX PARTE MOTION TO AMEND JOINT ADMINISTRATION ORDER (DOCKET NO. 97) PURSUANT TO RULE 1015(b) [DE 65], the cases of the six (6) Real Estate Debtors were administratively separated from the four (4) DC Solar Debtors, with the lead case for the Real Estate Debtors designated as Dora Dog Properties, LLC, Case No. 19-50103-gs.

2. Dora Dog is the owner of certain commercial real property located at 815 Sunset Drive, Antioch, Contra Costa County, CA ("Real Property").

3. Trustee requires appointment of a real estate broker that will assist the Trustee in marketing and selling the Real Property for the highest possible value. Accordingly, subject to Bankruptcy Court approval, the Trustee has entered into a Commercial and Residential Income Listing Agreement ("Listing Agreement") for the Real Property with FIRST REPUBLIC REAL ESTATE ("FIRST REPUBLIC"), with Ray "Jimmy" Smith acting as exclusive real estate agent for the Real Property. A copy of the Listing Agreement, with all relevant disclosures, is attached hereto and incorporated herewith as **Exhibit A**. Therefore, Trustee is seeking authorization to employ said broker under the terms as those set forth in the Listing Agreement.

4. FIRST REPUBLIC agrees that its appointment shall be conditioned upon the same agent only representing the Trustee as Seller and not representing a buyer(s) in the same transaction in connection with the sale of property under the parties' Listing Agreement. If FIRST

2

REPUBLIC also acts as broker for any potential buyer(s), different agents within FIRST REPUBLIC must represent the Trustee and buyer, and in no event shall the same agent represent both the Trustee and buyer in the same transaction.

5. The Listing Agreement has an effective date of April 1, 2022, expires on February 28, 2023, and the initial listing price for the Real Property is $6,100,000.

6. The consideration agreed to be paid to FIRST REPUBLIC under the Listing Agreement, subject to the approval of the United States Bankruptcy Court, is to compensate FIRST REPUBLIC at 7.25% of the gross sales price of the Real Property ("Commission"), of which 3% of the gross sales price of the Real Property shall be paid to any cooperating broker, as defined in the parties Listing Agreement, which Commission shall be due and payable upon closing of a successful sale of the Real Property. These are the customary rates charged by FIRST REPUBLIC and the Trustee believes the fees are reasonable and necessary. Finally, this basis of compensation is authorized pursuant to Sections 328(a) of the Bankruptcy Code.

7. Pursuant to the provisions contained in 11 U.S.C. Sections 327(a) and 1107(b), the Trustee hereby applies to the Court to appoint FIRST REPUBLIC to act as the Trustee's exclusive real estate broker as more specifically set forth above. FIRST REPUBLIC has many years of experience with respect to residential and commercial real property sales in California. Therefore, the appointment of FIRST REPUBLIC to represent Trustee in this matter is in the estate's best interests and would be the most efficient manner of proceeding for the estate.

8. FIRST REPUBLIC has indicated its willingness to act on the Trustee's behalf, and to be compensated in accordance with the terms and conditions set forth herein. To the best of Trustee's knowledge, the partners/members/shareholders and associates of FIRST REPUBLIC represent no interest adverse to the estate and have no connection with the Trustee, the Debtors, the Debtors' creditors, or any other party in interest, or their respective attorneys and accountants, including the United States Trustee, or any person employed in the office of the United States Trustee, other than the fact that Ray "Jimmy" Smith, the Broker Associate for FIRST REPUBLIC, and his property management firm, Professional Property Management, have been employed as the Trustee's property manager for this Real Property and other properties during these Chapter

1 | 7 cases. Based on the experience and extensive knowledge and understanding of issues involving sales of similar residential and commercial property, it is in the best interest of the Trustee and necessary to the estate to employ FIRST REPUBLIC, and said firm believes its employment is in the best interests of the estate.

9. Finally, the Trustee requests authorization from this Court to pay FIRST REPUBLIC directly from escrow upon successful closing of the sale of the Real Property as set forth above, without the necessity of filing a fee application, although any payment of Commission would first be subject to Court approval and included in any Motion requesting authorization to sell the Real Properties.

**WHEREFORE**, Trustee respectfully requests that this Court enter its order: (1) authorizing the employment of FIRST REPUBLIC as exclusive broker to sell the Real Property pursuant to the terms and conditions set forth above and in the Listing Agreement attached hereto as **Exhibit A**; and (2) for such other and further relief as the Court deems just under the circumstances.

Dated this 8th day of July 2022.

HARRIS LAW PRACTICE LLC
6151 Lakeside Drive, Suite 2100
Reno, Nevada 89511

/s/ Stephen R. Harris
_____
STEPHEN R. HARRIS, ESQ.
Attorney for Trustee

# EXHIBIT A



# DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/21)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(j), (k), and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**
A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
    (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b) A duty of honest and fair dealing and good faith.
    (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**
A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
    (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b) A duty of honest and fair dealing and good faith.
    (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**
A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
    (a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
    (b) Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**
Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as a dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.
The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.
If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.
Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.
Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE SECOND PAGE.**

☐ Buyer ☒ Seller ☐ Landlord ☐ Tenant _[signature]_ Trustee o Dora Dog Properties, LLC  Date 7/8/22

☐ Buyer ☒ Seller ☐ Landlord ☐ Tenant _____ W. D. Gieseke, US Bankruptcy Trustee  Date _____

Agent _____ **First Republic Real Estate** _____ DRE Lic. # **01902148** _____
                 Real Estate Broker (Firm)
By _[signature]_____ DRE Lic. # **01902148**    Date 3/23/2022
    (Salesperson or Broker-Associate, if any)

© 2021, California Association of REALTORS®, Inc.

**AD REVISED 12/21 (PAGE 1 OF 2)**



DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)

## CIVIL CODE SECTIONS 2079.13 – 2079.24 (2079.16 APPEARS ON THE FRONT)

2079.13. As used in Sections 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings:
(a) "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. (b) "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. (c) "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobilehome, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. (d) "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. (e) "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. (f) "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. (g) "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. (h) "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. (i) "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. (j) "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobilehome as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. (k) "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. (l) "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. (m) "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. (n) "Buyer's agent" means an agent who represents a buyer in a real property transaction.
2079.14. A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and shall obtain a signed acknowledgment of receipt from that seller and buyer, except as provided in Section 2079.15, as follows: (a) The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. (b) The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.
2079.15. In any circumstance in which the seller or buyer refuses to sign an acknowledgment of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.
2079.16 Reproduced on Page 1 of this AD form.
2079.17(a) As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. (b) As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.

CONFIRMATION: (c) The confirmation required by subdivisions (a) and (b) shall be in the following form:

Seller's Brokerage Firm _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)
Seller's Agent _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
Buyer's Brokerage Firm _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)
Buyer's Agent _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

(d) The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.
2079.18 (Repealed pursuant to AB-1289)
2079.19 The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.
2079.20 Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.
2079.21 (a) A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. (b) A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. (c) "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. (d) This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.
2079.22 Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.
2079.23 A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.
2079.24 Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



AD REVISED 12/21 (PAGE 2 OF 2)

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**



**CALIFORNIA ASSOCIATION OF REALTORS®**

# COMMERCIAL AND RESIDENTIAL INCOME LISTING AGREEMENT
(C.A.R. Form CLA, Revised 6/17)

Date Prepared: **March 15, 2022**

1. **EXCLUSIVE AUTHORIZATION:** **Dora Dog Properties, LLC, W. D. Gieseke, US Bankruptcy Trustee** ("Owner") hereby employs and grants **First Republic Real Estate** ("Broker") beginning (date) **April 1, 2022** and ending at 11:59 P.M. on (date) **February 28, 2023** ("Listing Period") the exclusive and irrevocable right to: ☒ SELL, ☐ LEASE, ☐ EXCHANGE, ☐ OPTION, or ☐ OTHER _____ the real property in the City of **Antioch**, County of **Contra Costa**, California, Assessor's Parcel No.: _____, described as: **815 Sunset Dr** ("Property").

2. **ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in an agreement between Owner and transferee, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded from the price.
   **ADDITIONAL ITEMS EXCLUDED:** _____
   **ADDITIONAL ITEMS INCLUDED:** *All rental agreements and personal property needed to run the property.*
   Owner intends that the above items be excluded or included in listing the Property, but understands that: (i) the Agreement between owner and transferee supersedes any intention expressed above and will ultimately determine which items are excluded and included in the transaction; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the Agreement between Owner and transferee.

3. **LISTING PRICE AND TERMS:**
   A. The listing price shall be **Six Million, One Hundred Thousand** Dollars ($ **6,100,000.00** ).
   B. Additional Terms: _____

4. **COMPENSATION TO BROKER:**
   **Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Owner and Broker (real estate commissions include all compensation and fees to Broker).**
   A. Owner agrees to pay to Broker as compensation for services irrespective of agency relationship(s): ☐ **7.250** percent of the listing price (or if an agreement is entered into, of the contract price), ☐ $ _____, OR ☐ in accordance with Broker's attached schedule of compensation; as follows:
      (1) If during the Listing Period, or any extension, Broker, cooperating broker, Owner or any other person procures a ready, willing, and able Transferee(s) whose offer on the Property on any price and terms is accepted by Owner, provided the Transferee completes the transaction or is prevented from doing so by Owner. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
      (2) If within **90** calendar days after the end of the Listing Period or any extension, Owner enters into a contract to sell, lease, exchange, option, convey or otherwise transfer the Property to anyone ("Prospective Transferee") or that person's related entity: (i) who physically entered and was shown the Property during the Listing Period, or any extension by Broker or a cooperating broker; or (ii) for whom Broker or any cooperating broker submitted to Owner a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Owner, however, shall have no obligation to Broker under this paragraph 4A(2) unless, not later than the end of the Listing Period or any extension or cancellation, Broker has given Owner a written notice of the names of such Prospective Transferees.
      (3) If, without Broker's prior written consent, the Property is withdrawn from sale, lease, exchange, option or other, as specified in paragraph 1, or is sold, conveyed, leased, rented, exchanged, optioned or otherwise transferred, or made unmarketable by a voluntary act of Owner during the Listing Period, or any extension thereof.
   B. If completion of the transaction is prevented by a party to the transaction other than Owner, then compensation due under paragraph 4A shall be payable only if and when Owner collects damages by suit, arbitration, settlement, or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection, if any.
   C. In addition, Owner agrees to pay Broker: **N/A**
   D. (1) Broker is authorized to cooperate and compensate brokers participating through the multiple listing service(s) ("MLS"): (i) by offering MLS brokers either: ☐ **3.000** percent of the purchase price, or ☐ $ _____ ;OR (ii) (If checked) ☐ as per Broker's policy.
      (2) Broker is authorized to cooperate and compensate brokers operating outside the MLS as per Broker's policy.
   E. Owner hereby irrevocably assigns to Broker the above compensation from Owner's funds and proceeds in escrow. Broker may submit this Listing Agreement, as instructions to compensate Broker pursuant to paragraph 4A, to any escrow regarding the Property involving Owner and a buyer, transferee or Prospective Transferee.
   F. (1) Owner represents that Owner has not previously entered into a listing agreement with another broker regarding the Property, unless specified as follows: **N/A**
      (2) Owner warrants that Owner has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the following Prospective Transferees: **N/A**
      (3) If the Property is transferred to anyone listed above during the time Owner is obligated to compensate another broker: (i) Broker is not entitled to compensation under this Listing Agreement; and (ii) Broker is not obligated to represent Owner in such transaction.

Owner's Initials (_____) (_____)

© 2017, California Association of REALTORS®, Inc.
**CLA REVISED 6/17 (PAGE 1 OF 4)**
**COMMERCIAL AND RESIDENTIAL INCOME LISTING AGREEMENT (CLA PAGE 1 OF 4)**

Property Address: **815 Sunset Dr, Antioch, CA 94509-2860**      Date: **March 15, 2022**

### 5. MULTIPLE LISTING SERVICE:

**A.** Broker is a participant/subscriber to _____**CCAR/Max Paragon**_____ Multiple Listing Service (MLS) and possibly others. Unless otherwise instructed in writing the Property will be listed with the MLS(s) specified above. That MLS is (or if checked ☐ is not) the primary MLS for the geographic area of the Property. All terms of the transaction, including sales price and financing, if applicable, (i) will be provided to the MLS in which the property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS and (ii) may be provided to the MLS even if the Property is not listed with the MLS.

---

**BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS; PRESENTING ALL OFFERS**

**WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit the MLS database to Internet sites that post property listings online.

**EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS.

**CLOSED/PRIVATE LISTING CLUBS OR GROUPS:** Closed or private listing clubs or groups are not the same as the MLS. The MLS referred to above is accessible to all eligible real estate licensees and provides broad exposure for a listed property. Private or closed listing clubs or groups of licensees may have been formed outside the MLS. Private or closed listing clubs or groups are accessible to a more limited number of licensees and generally offer less exposure for listed property. Whether listing property through a closed, private network - and excluding it from the MLS - is advantageous or disadvantageous to a seller, and why, should be discussed with the agent taking the Seller's listing.

**NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

**OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: (a) real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; (b) information about Seller's Property will not be transmitted to various real estate Internet sites that are used by the public to search for property listings; (c) real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.

**REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.

**PRESENTING ALL OFFERS:** Seller understands that Broker must present all offers received for Seller's Property unless Seller gives Broker written instructions to the contrary.

| Owner's Initials _____ | Broker's/Agent's Initials _____ / _____ |

---

**B.** MLS rules generally provide that residential real property and vacant lot listings be submitted to the MLS within 2 days or some other period of time after all necessary signatures have been obtained on the listing agreement. Broker will not have to submit this listing to the MLS if, within that time, Broker submits to the MLS a form signed by Seller (C.A.R. Form SELM or the local equivalent form).

**C.** MLS rules allow MLS data to be made available by the MLS to additional Internet sites unless Broker gives the MLS instructions to the contrary. Seller acknowledges that for any of the below opt-out instructions to be effective, Seller must make them on a separate instruction to Broker signed by Seller (C.A.R. Form **SELI** or the local equivalent form). Specific information that can be excluded from the Internet as permitted by (or in accordance with) the MLS is as follows:

  (1) **Property Availability:** Seller can instruct Broker to have the MLS not display the Property on the Internet.

  (2) **Property Address:** Seller can instruct Broker to have the MLS not display the Property address on the Internet.

Seller understands that the above opt-outs would mean consumers searching for listings on the Internet may not see the Property or Property's address in response to their search.

  (3) **Feature Opt-Outs:** Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below. Seller understands (i) that these opt-outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; (ii) that other Internet sites may or may not have the features set forth herein; and (iii) that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.

  (a) **Comment And Reviews:** The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property.

  (b) **Automated Estimate Of Value:** The ability to link to another site containing such automated estimate of value if the link is in immediate conjunction with the Property.

Owner's Initials  ( _____ )



**CLA REVISED 6/17 (PAGE 2 OF 4)**

**COMMERCIAL AND RESIDENTIAL INCOME LISTING AGREEMENT (CLA PAGE 2 OF 4)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com    815 Sunset Dr

Property Address: **815 Sunset Dr, Antioch, CA 94509-2860**          Date: **March 15, 2022**

6. **OWNER REPRESENTATIONS:** Owner represents that, unless otherwise specified in writing, Owner is unaware of: (i) any Notice of Default recorded against the Property; (ii) any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; (iii) any bankruptcy, insolvency or similar proceeding affecting the Property; (iv) any litigation, arbitration, administrative action, government investigation, or other pending or threatened action that affects or may affect the Property or Owner's ability to transfer it; and (v) any current, pending or proposed special assessments affecting the Property. Owner shall promptly notify Broker in writing if Owner becomes aware of any of these items during the Listing Period or any extension thereof.

7. **BROKER'S AND OWNER'S DUTIES:** Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Listing Agreement. Unless Owner gives Broker written instructions to the contrary, Broker is authorized to order reports and disclosures as appropriate or necessary, and advertise and market the Property in any method and medium, including the Internet, selected by Broker, and, to the extent permitted by these media, including MLS, control the dissemination of the information submitted to any medium. Owner agrees to consider offers presented by Broker, and to act in good faith toward accomplishing the transfer of the Property by, among other things, making the Property available for showing at reasonable times and referring to Broker all inquiries of any party interested in the Property. Owner agrees to provide Broker and transferee(s) all written disclosures, as required by law. Owner further agrees to immediately disclose in writing any condition known to Owner that affects the Property, including, but not limited to, any past or current generation, storage, release, threatened release, disposal, and presence and location of asbestos, PCB transformers, petroleum products, flammable explosives, underground storage tanks and other hazardous, toxic or contaminated substances or conditions in, on, or about the Property. Owner shall maintain public liability and property damage insurance on the Property during the Listing Period or any extension. Owner waives all subrogation rights under any insurance against Broker, cooperating brokers or employees. Owner is responsible for determining at what price to list and transfer the Property. Owner further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments and attorney's fees arising from any incorrect information supplied by Owner, or from any material facts that Owner knows but fails to disclose including dangerous or hidden conditions on the Property. ☐ (If checked) The attached property disclosure is part of this Listing Agreement and may be provided to Prospective Transferees.

8. **DEPOSIT:** Broker is authorized to accept and hold on Owner's behalf any deposits to be applied toward the contract price.

9. **AGENCY RELATIONSHIPS:**
   A. **Disclosure:** Owner acknowledges receipt of (C.A.R. Form AD) "Disclosure Regarding Real Estate Agency Relationship" form which is required to be provided to Owner prior to entering into this Listing Agreement.
   B. **Owner Representation:** Broker shall represent Owner in any resulting transaction, except as specified in paragraph 4F.
   C. **Possible Dual Agency With Buyer:** Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Owner and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Owner any election to act as a dual agent representing both Owner and Buyer. If a Buyer is procured directly by Broker or an associate licensee in Broker's firm, Owner hereby consents to Broker acting as a dual agent for Owner and such Buyer. In the event of an exchange, Owner hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Owner understands and agrees that: (i) Broker, without the prior written consent of Owner, will not disclose to Buyer that Owner is willing to transfer the Property at a price less than the listing price; (ii) Broker, without the prior written consent of Buyer, will not disclose to Owner that Buyer is willing to pay a price greater than the offered price; and (iii) except for (i) and (ii) above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.
   D. **Other Owners:** Owner understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or acquire through Broker, property the same as or similar to Owner's Property. Owner consents to Broker's representation of owners and buyers of other properties before, during, and after the end of this Listing Agreement.
   E. **Confirmation:** Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Owner's execution of an agreement to sell.

10. **SECURITY AND INSURANCE:** Broker is not responsible for loss of or damage to personal or real property or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of the interior of the Property. Owner agrees: (i) to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; and (ii) to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Owner.

11. **KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors and accompanying prospective buyers. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are **not** insurers against injury, theft, loss, vandalism, or damage attributed to the use of a keysafe/lockbox. Owner does (or if checked ☒ does not) authorize Broker to install a keysafe/lockbox. If Owner does not occupy the Property, Owner shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox.

12. **SIGN:** Owner authorizes Broker to install a FOR SALE/SOLD/LEASE sign on the Property unless otherwise indicated in writing.

13. **EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state, and local anti-discrimination laws.

14. **ATTORNEY'S FEES:** In any action, proceeding, or arbitration between Owner and Broker regarding the obligation to pay compensation under this Listing Agreement, the prevailing Owner or Broker shall be entitled to reasonable attorney's fees and costs, except as provided in paragraph 18A.

15. **ADDITIONAL TERMS:** ☐ REOL ☐ SSIA _1. The property is sold as-is and will require bankruptcy court confirmation. All offers are subject to an overbid in court._
    _2. All personal property that is controlled by the Trustee of the Bankruptcy Estate is included as-is_
    _3. This is an Exclusive Listing Agreement with the US Bankruptcy Estate with W.D Gieseke, Trustee. Any addition to the Exclusive Listing Agreement I.E. DUAL AGENCY, MUST BE approved by the Court, PRIOR to acceptance._
    _4. The tenants and personal property associated with running the property shall be included as-is where is._

Owner's Initials [initials] (_____)

**CLA REVISED 6/17 (PAGE 3 OF 4)**

**COMMERCIAL AND RESIDENTIAL INCOME LISTING AGREEMENT (CLA PAGE 3 OF 4)**

Property Address: **815 Sunset Dr, Antioch, CA 94509-2860**  Date: **March 15, 2022**

16. **MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Listing Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Listing Agreement, in writing, within 5 days after its execution.
17. **SUCCESSORS AND ASSIGNS:** This Listing Agreement shall be binding upon Owner and Owner's successors and assigns.
18. **DISPUTE RESOLUTION:**
    A. **MEDIATION:** Owner and Broker agree to mediate any dispute or claim arising between them regarding the obligation to pay compensation under this Agreement, before resorting to arbitration or court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. **Exclusions from this mediation agreement are specified in paragraph 18B.**
    B. **ADDITIONAL MEDIATION TERMS:** The following matters shall be excluded from mediation: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation provisions.
    C. **ADVISORY:** If Owner and Broker desire to resolve disputes arising between them through arbitration rather than court, they can document their agreement by attaching and signing an Arbitration Agreement (C.A.R. Form ARB).
19. **ENTIRE CONTRACT:** All prior discussions, negotiations, and agreements between the parties concerning the subject matter of this Listing Agreement are superseded by this Listing Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Listing Agreement and any supplement, addendum, or modification, including any photocopy or facsimile, may be executed in counterparts.
20. **OWNERSHIP, TITLE AND AUTHORITY:** Owner warrants that: (i) Owner is the owner of the Property; (ii) no other persons or entities have title to the Property, and (iii) Owner has the authority to both execute this Listing Agreement and transfer the Property.
    Exceptions to ownership, title and authority are as follows: _**The property, etc is sold through the US Bankruptcy court by the appointed US Trustee.**_

By signing below, Owner acknowledges that Owner has read, understands, received a copy of and agrees to the terms of this Listing Agreement and any attached schedule of compensation.

Date _____ Trustee _____ at _____
Owner **Dora Dog Properties, LLC**
By _____  Title _____
Address **18124 Wedge Pkwy #518**  City **Reno**  State **NV**  Zip **89511-8134**
Telephone _____ Fax _____  E-mail _____

Date _____ at _____
Owner **W. D. Gieseke, US Bankruptcy Trustee**
By _____  Title _____
Address **18124 Wedge Pkwy**  City **Reno**  State **NV**  Zip **89511-8134**
Telephone _____ Fax _____  E-mail _____

Date _____ at _____
Owner _____
By _____  Title _____
Address _____  City _____  State _____  Zip _____
Telephone _____ Fax _____  E-mail _____

Date _____ at _____
Owner _____
By _____  Title _____
Address _____  City _____  State _____  Zip _____
Telephone _____ Fax _____  E-mail _____

Real Estate Broker (Firm) **First Republic Real Estate**  DRE Lic. # **01902148**
By (Agent) _____  DRE Lic. # **01902148**  Date **3/23/2022**
Address **5054 El Portal Drive, Suite#C**  City **El Sobrane**  State **CA**  Zip **94803**
Telephone **925.255.6320**  Fax _____  E-mail **ppm4rent@aol.com**

© 2017, California Association of REALTORS®, Inc.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



**CLA REVISED 6/17 (PAGE 4 OF 4)**
**COMMERCIAL AND RESIDENTIAL INCOME LISTING AGREEMENT (CLA PAGE 4 OF 4)**



# CALIFORNIA CONSUMER PRIVACY ACT ADVISORY, DISCLOSURE AND NOTICE
(C.A.R. Form CCPA, Revised 12/21)

The California Consumer Privacy Act (commencing with Civil Code § 1798.100) ("CCPA") grants to California residents certain rights in their private, personal information ("PI") that is collected by companies with whom they do business. Under the CCPA, PI is defined broadly to encompass non-public records information that could reasonably be linked directly or indirectly to you. PI could potentially include photographs of, or sales information about, your property.

During the process of buying and selling real estate your PI will be collected and likely shared with others, including real estate licensees, a Multiple Listing Service, real estate internet websites, service providers, lenders, and title and escrow companies, to name several possibilities. Businesses that are covered by the CCPA are required to grant you various rights in your PI, including the right to know what PI is collected, "opt out" or stop the transfer of your PI to others, and the right to request that the business delete your PI entirely. You may get one or more notices regarding your CCPA rights from businesses you interact with in a real estate transaction. However, not all businesses that receive or share your PI are obligated to comply with the CCPA. Also, even businesses that are otherwise covered under the CCPA may have a legal obligation to maintain PI, notwithstanding your instruction to the contrary. For instance, regardless of whether they are covered by CCPA, under California law, brokers and Multiple Listing Services are required to maintain their records for 3 years. If you wish to exercise your rights under CCPA, where applicable, you should contact the respective business directly.

You can obtain more information about the CCPA and your rights under the law from the State of California Department of Justice (oag.ca.gov/privacy/ccpa).

**I/we acknowledge receipt of a copy of this California Consumer Privacy Act Advisory, Disclosure and Notice.**

Buyer/Seller/Landlord/Tenant _____ Trustee _____ Date 7/8/22
*Dora Dog Properties, LLC*

Buyer/Seller/Landlord/Tenant _____ Date _____
*W. D. Gieseke, US Bankruptcy Trustee*

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**CCPA REVISED 12/21 (PAGE 1 OF 1)**

**CALIFORNIA CONSUMER PRIVACY ACT ADVISORY (CCPA PAGE 1 OF 1)**

I,11CA1    Phone: 1    Fax:    815 Sunset Dr
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com