STEPHEN R. HARRIS, ESQ.
Nevada Bar No. 001463
HARRIS LAW PRACTICE LLC
6151 Lakeside Drive, Suite 2100
Reno, NV 89511
Telephone:  (775) 786-7600
Email: steve@harrislawreno.com
Attorneys for W. Donald Gieseke, Trustee

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

*****

IN RE:

DORA DOG PROPERTIES, LLC

☒   AFFECTS THIS DEBTOR

☐   AFFECTS DOG BLUE PROPERTIES, LLC

☐   AFFECTS BRANDY BOY PROPERTIES, LLC

☐   AFFECTS 475 CHANNEL ROAD, LLC

☐   AFFECTS PARK ROAD, LLC

☐   AFFECTS 140 MASON CIRCLE, LLC

☐   AFFECTS ALL DEBTORS.

_____/

CASE NO. BK-19-50103-gs
(Chapter 7)

Jointly Administered with:

| 19-50104-gs | Dog Blue Properties, LLC |
| 19-50105-gs | Brandy Boy Properties, LLC |
| 19-50106-gs | 475 Channel Road, LLC |
| 19-50108-gs | Park Road, LLC |
| 19-50109-gs | 140 Mason Circle, LLC |

**MOTION FOR ORDER APPROVING: (1) SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES (11 U.S.C. §§363(b) AND (f)); AND (2) PAYMENT OF NORMAL CLOSING COSTS [815 SUNSET DRIVE, ANTIOCH, CA 94509-2860]**

Hrg. Date:   October 27, 2022
Hrg. Time:   2:30 p.m.
Est. Time:   15 minutes
Set by:      Calendar Clerk

       W. Donald Gieseke, Trustee for the Chapter 7 bankrupt estates of six (6) Jointly Administered Debtors, specifically, DORA DOG PROPERTIES, LLC ("Dora Dog"); DOG

1

BLUE PROPERTIES, LLC ("Dog Blue"); BRANDY BOY PROPERTIES, LLC ("Brandy Boy"); 475 CHANNEL ROAD, LLC ("475 Channel Road"); PARK ROAD, LLC ("Park Road"); and 140 MASON CIRCLE, LLC ("140 Mason Circle"); by and through his counsel STEPHEN R. HARRIS, ESQ. of HARRIS LAW PRACTICE LLC, hereby files his MOTION FOR ORDER APPROVING: (1) SALE OF REAL PROPERTY FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES (11 U.S.C. §§363(b) AND (f)); AND (2) PAYMENT OF NORMAL CLOSING COSTS [815 SUNSET DRIVE, ANTIOCH, CA 94509-2860], and states and alleges as follows:

**BACKGROUND**

1.      Debtor DORA DOG PROPERTIES, LLC; Debtor DOG BLUE PROPERTIES, LLC; Debtor BRANDY BOY PROPERTIES, LLC; Debtor 475 CHANNEL ROAD, LLC; Debtor PARK ROAD, LLC; and Debtor 140 MASON CIRCLE, LLC; each filed Chapter 11 Petitions on January 30, 2019 ("Petition Date"). On March 22, 2019, this Court entered its Order converting the cases to Chapter 7 proceedings, and on March 22, 2019, W. Donald Gieseke was duly appointed as the Chapter 7 interim trustee ("Trustee") for six (6) of ten (10) jointly administered cases (Case Nos. 19-50103; 19-50104; 19-50105; 19-50106; 19-50108; and 19-50109) (collectively the "Real Estate Debtors"). Pursuant to an ORDER APPROVING TRUSTEE'S EX PARTE MOTION TO AMEND JOINT ADMINISTRATION ORDER (DOCKET NO. 97) PURSUANT TO RULE 1015(b) (Docket No. 65), the cases of the six (6) Real Estate Debtors were administratively separated from the four (4) DC Solar Debtors, with the lead case for the Real Estate Debtors designated as Dora Dog Properties, LLC, Case No. 19-50103-gs.

2.      Debtor Dora Dog is the owner of certain commercial real property located at 815 Sunset Drive, Antioch, California 94509-2860 (the "Property"). On August 29, 2022, this Court entered its Order Authorizing Trustee to Employ Real Estate Broker [First Republic Real Estate] (DE 715) authorizing the Trustee to enter into an exclusive listing agreement with First Republic Real Estate for marketing and sale of the Property.

3.      The Trustee has entered into a Commercial Purchase Agreement and Joint Escrow

Instructions, with Counteroffers and Seller Counter Offer No. 1 with Addendums (collectively the "Offer"), a true and correct copy of which is attached as **Exhibit A** and incorporated herein by reference, for the sale of the Property, to Northwest Building, LLC, or assignees (the "Buyer"), in the amount of Seven Million Four Hundred Thousand Dollars ($7,400,000) (the "Purchase Price") for the Property, including all personal property located therein that is currently owned by the Debtor's estate.

4.     The Purchase Price of $7,400,000, shall be paid as follows: $250,000 earnest deposit payable within two business days after acceptance, which shall become non-refundable after Buyers release their inspection contingencies within thirty days, and balance of $7,150,000 due at close of escrow. The Offer is subject to the Trustee obtaining approval of this Court and is scheduled to close within fifteen days after Court approval. Additionally, all non-delinquent real estate taxes, and pre-paid insurance will be prorated between the parties as of the Closing Date, with other costs to be paid by each party as set forth in the Offer. Trustee and Buyers agree to split the escrow fees, Buyer shall pay the title insurance policy, and Trustee shall pay any county transfer tax. The Offer has additional terms and conditions continued therein, which the parties may refer to by reviewing the **Exhibit A** attached hereto.

5.     The Trustee is also seeking authorization to pay real estate commissions upon close of escrow equal to 5.25% of the gross Purchase Price, with said commission to be split between the Trustee and Buyer's broker, so that 3.25% is paid to First Republic Real Estate as Trustee's broker and 2% is paid to the Buyers' broker, also First Republic Real Estate. Although the same broker represents the Buyer and Trustee, different selling agents represent each party.

6.     The only current encumbrances owing against the Property are unpaid real property taxes of an unknown amount, with the exact amount due and owing to be determined at the time of close of escrow.

7.     By this Motion, the Trustee seeks an order approving the sale of the Property of the estate free and clear of liens and encumbrances under 11 U.S.C. §363(b) and (f) and subject to overbids to purchase the Property for a sales price more than the prospective Buyers' current offer at the appointed hearing to approve this transaction. Trustee also seeks an Order determining

3

that Northwest Building LLC, or assignees, or any successful over-bidder, is a good faith purchaser, and is entitled to the safe harbor protections of 11 U.S.C. § 363(m), and further waiving the 14-day stay under FRBP 6004(h).

8.    Trustee has had discussions with his real estate broker, Ray "Jimmy" Smith of First Republic Real Estate, who has indicated that the proposed Offer reflects the estimated current market value of the Property. Also, the Offer states that the Property is sold "as is."

9.    Trustee believes the sale of the Property herein is in the best interest of the estate because the current offer is for more than the original listing price and is scheduled to close quickly. Accordingly, the Trustee believes in his best business judgment that the Property has been properly "market tested," and the Offer he has accepted is the best and highest offer for the Property.  However, in the event a higher offer to purchase the Property before, or at, the appointed hearing is received, the following terms and conditions must be complied with:

**Minimum Deposit Required to Bid**:  Interested bidders must be in possession of a cashier's check in the amount of ten percent (10%) of their opening bid, made payable to First American Title Company at the time of hearing, with proof to be shown to the Trustee and Bankruptcy Court. All bidders' due diligence must be completed before the date of the hearing;

**Escrow Deposit**:  The cashier's check from the winning bidder will be deposited in escrow with First American Title Company at 1850 Mt. Diablo Blvd., Suite 530, Walnut Creek, CA 94596 within two (2) business days after the hearing on the Motion, which deposit is deemed non-refundable and forfeited to the Trustee in the event the successful bidder fails to close for any reason;

**Proof of Funds**:  At the hearing, any potential buyers must be able to provide adequate proof to the Trustee and Bankruptcy Court of the ability to fund the final purchase price.

**Minimum bidding increments**:   The minimum overbid shall be $7,500,000, with additional bidding increments of no less than $50,000, or as may be ordered by the Court;

**Close of Escrow**:  Any successful overbidder must be able to close escrow within fifteen (15) days after entry of an Order approving this Motion.

**Break-up Fee:** Buyer is acting as a stalking horse bidder. In the event another party ends

up being the successful overbidder of the Property, Trustee shall return Buyer's earnest money deposit of $250,000, plus pay Buyer an additional $50,000 from the purchase price as a break-up fee.

## **LEGAL ARGUMENT**

### **A.  The Proposed Sale is In the Best Interest of the Estate and Should be Approved**

Bankruptcy Code § 363(b)(1) provides that "the trustee [or debtor-in-possession], after notice and hearing, may use, sell, or lease other than in the ordinary course of business, property of the estate."  This provision generally allows a Trustee, subject to court approval, to sell property of the estate outside of the ordinary course of business when proposed sale is a sound exercise of Trustee's business judgment and when the sale is proposed in good faith and for fair value. *Committee of Equity Security Holders v. Lionel Corporation (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Ernst Homes Center, Inc.,* 209 B.R. 974, 980 (Bankr. W.D. Wash. 1997). When a debtor (or trustee) articulates a reasonable basis for its business decisions, "Courts will generally not entertain objections to the debtor's conduct." *Committee of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns- Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D. N.Y. 1986).

The decision to sell the estate's interest in the Property has substantial business justification. The Trustee has evaluated the offer obtained from the Buyer and he has obtained confirmation that Buyer can fund the remaining purchase price. If the Property does not sell quickly, the estate will continue to incur expenses of additional maintenance, ongoing insurance and real property taxes and bear the risk of a drop in real property values. Trustee believes the offered price is fair and equitable and represents the fair market value for the Property.

### **B.  The Buyer is a Good Faith Purchaser Subject to Safe Harbor Provisions**

The Offer with the Buyer was negotiated at arm's length, in good faith, and the Trustee believe its terms are fair and reasonable as dictated by current market conditions. The Buyer has no connections to the Trustee or Debtors. Accordingly, the Buyer is a good faith purchaser and subject to the protections afforded it pursuant to 11 U.S.C. §363(m).

**C. The Sale Should be Made Free and Clear of Liens Because the Sales Price Is Sufficient to Pay All Financial Encumbrances**

Pursuant to 11 U.S.C. §363(f), the Trustee may sell property of the estate free and clear of any interest in such property of an entity other than the estate, only if…

    (1) Applicable nonbankruptcy law permits sale of such property free and clear of such interest;

    (2) Such entity consents;

    (3) Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

    (4) Such interest is in bona fide dispute; or

    (5) Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §363(f). In the instant case, the Property can be sold free and clear of any liens pursuant to Section 363(f)(3) because existing liens consist only of unpaid real property taxes, and the sale price of the Property is sufficient to pay the liens in full upon closing.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests the entry of an Order: (1) authorizing the foregoing sale of the Property free and clear of liens and encumbrances as more particularly described above; (2) authorizing him to execute any and all documentation necessary on behalf of the estate to complete this transaction; (3) authorizing payment of real property taxes and closing costs as more fully set forth above and in the attached Offer; (4) authorizing payment of real estate commissions at close of escrow equal to 5.25% of the gross Purchase Price, split between First Republic Real Estate (3.25%) as Trustee's broker, and First Republic Real Estate (2%) as Buyer's broker as set forth in the Offer; (5) determining that Northwest Building, LLC, or assignee, or any successful over-bidder, is a good faith purchaser and entitled to the safe harbor protections of 11 U.S.C. § 363(m); (6) waiving the 14-day stay under FRBP 6004(h) so that the sale can close as soon as practicable after entry of an Order approving this Motion; and (6) granting such other and further relief as the Court deems appropriate.

1

Dated this 20th day of September 2022.

2

HARRIS LAW PRACTICE LLC
6151 Lakeside Drive, Suite 2100

3

Reno, Nevada 89511

4

*/s/ Stephen R. Harris*

5

_____

6

STEPHEN R. HARRIS, ESQ.
Attorneys for W. DONALD GIESEKE,

7

Trustee

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

Authentisign ID: 6B788822-BE81-4A8F-9482-C9A17B24545A



# POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER - DISCLOSURE AND CONSENT
### (C.A.R. Form PRBS, Revised 12/21)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual broker's or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the buyer's or seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the seller's willingness to accept a price less than the listing price or the buyer's willingness to pay a price greater than the price offered; and except as set forth above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

**Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.**

| | | |
|---|---|---|
| Seller ___ Trustee ___ | | Date 9/12/22 |
| Seller _____ | | Date _____ |
| Buyer _____ | NORTHWEST BUILDING LLC. Date _____ |
| Buyer _____ | | Date _____ |

Buyer's Brokerage Firm _FIRST REPUBLIC REAL ESTATE, INC._    DRE Lic # _01902148_    Date _____

By _LOURDES VALENCIA_    DRE Lic # _01290791_    Date _09/15/2022_

Seller's Brokerage Firm _FIRST REPUBLIC REAL ESTATE, INC._    DRE Lic # _01902148_    Date _____

By _RAY (JIMMY) SMITH_    DRE Lic # _____    Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

PRBS REVISED 12/21 (PAGE 1 OF 1)

**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)**

First Republic Real Estate Inc., 5054 El Parral Dr. El Sobrante CA 94803    Phone: 4158994534    Fax:    815 Sunset Dr.
Lourdes Valencia                                                                          www.lwolf.com
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com

DocuSign ID: 05CA9402-34BE-4C73-8BB2-6ED609F2601F

**DISCLOSURE REGARDING**
**REAL ESTATE AGENCY RELATIONSHIP**
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/21)

CALIFORNIA
ASSOCIATION
OF REALTORS®

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(j), (k), and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:

To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
    (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b)  A duty of honest and fair dealing and good faith.
    (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:

To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
    (a)  Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b)  A duty of honest and fair dealing and good faith.
    (c)  A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more salespersons and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.

In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
    (a)  A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
    (b)  Other duties to the Seller and the Buyer as stated above in their respective sections.

In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**

Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as a dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation.

Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE SECOND PAGE.

☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ **NORTHWEST BUILDING LLC.** Date 09/09/2022

                                                             Date 9/12/22

☐ Buyer ☒ Seller ☐ Landlord ☐ Tenant _____ Trustee _____ Date _____

Agent **FIRST REPUBLIC REAL ESTATE, INC.** DRE Lic. # 01902148
              Real Estate Broker (Firm)

By _____ **LOURDES VALENCIA** DRE Lic. # 01290791 _____ Date _____
      (Salesperson or Broker-Associate, if any)

© 2021, California Association of REALTORS®, Inc.

AD REVISED 12/21 (PAGE 1 OF 2)

☖ EQUAL HOUSING OPPORTUNITY

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

815 Sunset Dr.

DocuSign ID: 0ECA94B2-24BE-4C73-6983-2FE4C9770CE4

**CIVIL CODE SECTIONS 2079.13 – 2079.24 (2079.16 APPEARS ON THE FRONT)**

2079.13. As used in Sections 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings: (a) "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. (b) "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. (c) "Commercial real property" means all real property in the state, except: (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobilehome, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. (d) "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. (e) "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to the seller pursuant to the terms of the agreement. (f) "Sellers agent" means a person who has obtained a listing of real property to act as an agent for compensation. (g) "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. (h) "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. (i) "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. (j) "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobilehome as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. (k) "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. (l) "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. (m) "Seller" means the transferor in a real property transaction, and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. (n) "Buyer's agent" means an agent who represents a buyer in a real property transaction.

2079.14. A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, as follows: (a) The seller's agent, if any, shall obtain a signed acknowledgement of receipt from that seller, except as provided in Section 2079.15, as follows: (a) The seller's agent, and shall obtain a signed acknowledgement of receipt from that seller, except as provided in Section 2079.15, as follows: (1) The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. (b) The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.

2079.15. In any circumstance in which the seller or buyer refuses to sign an acknowledgement of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.

2079.16 Reproduced on Page 1 of this AD form.

2079.17(a) As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. (b) As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.

CONFIRMATION: (c) The confirmation required by subdivisions (a) and (b) shall be in the following form:

Seller's Brokerage Firm _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)
Seller's Agent _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)
Buyer's Brokerage Firm _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)
Buyer's Agent _____ DO NOT COMPLETE. SAMPLE ONLY _____ License Number _____
Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

(d) The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.

2079.18 (Repealed pursuant to AB-1289)

2079.19 The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, and any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

2079.20 Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

2079.21 (a) A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. (b) A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. (c) "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. (d) This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

2079.22 Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.

2079.23 A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

2079.24 Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

AD REVISED 12/21 (PAGE 2 OF 2)

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**

DocuSign ID: 06CA9482-24B5-4C73-8BB2-6ED809F2501F

CALIFORNIA
ASSOCIATION
OF REALTORS®

# COMMERCIAL PURCHASE AGREEMENT
## AND JOINT ESCROW INSTRUCTIONS
(C.A.R. Form CPA, Revised 6/22)

Date Prepared: **September 8, 2022**

1. **OFFER:**
   A. **THIS IS AN OFFER FROM** _NORTHWEST BUILDING LLC._ ("Buyer").
      ☐ Individual(s), ☐ A Corporation, ☐ A Partnership, ☒ An LLC, ☐ Other
   B. **THE PROPERTY** to be acquired is _815 Sunset Dr._, situated
      in _Antioch_ (City), _Contra Costa_ (County), California, _94509-2860_ (Zip Code),
      Assessor's Parcel No(s). _068-100-044_ ("Property").
      (Postal/Mailing address may be different from city jurisdiction. Buyer is advised to investigate.)
   C. **THE TERMS OF THE PURCHASE** ARE SPECIFIED BELOW AND ON THE FOLLOWING PAGES.
   D. Buyer and Seller are referred to herein as the "Parties." Brokers and Agents are **not** Parties to this Agreement.

2. **AGENCY:**
   A. **DISCLOSURE:** The Parties each acknowledge receipt of a "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD) if represented by a real estate licensee. Buyer's Agent is not legally required to give to Seller's Agent the AD form Signed by Buyer. Seller's Agent is not legally obligated to give to Buyer's Agent the AD form Signed by Seller.
   B. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction.
      Seller's Brokerage Firm _FIRST REPUBLIC REAL ESTATE, INC._ License Number _01902148_
      Is the broker of (check one): ☒ the Seller; or ☐ both the Buyer and Seller (Dual Agent).
      Seller's Agent _RAY (JIMMY) SMITH_ License Number _____
      Is (check one): ☒ the Seller's Agent (Salesperson or broker associate); or ☐ both the Buyer's and Seller's Agent (Dual Agent).
      Buyer's Brokerage Firm _FIRST REPUBLIC REAL ESTATE, INC._ License Number _01902148_
      Is the broker of (check one): ☒ the Buyer; or ☐ both the Buyer and Seller (Dual Agent).
      Buyer's Agent _LOURDES VALENCIA_ License Number _01290791_
      Is (check one): ☒ the Buyer's Agent (Salesperson or broker associate); or ☐ both the Buyer's and Seller's Agent (Dual Agent).
   C. **More than one Brokerage** represents ☐ Seller, ☐ Buyer. See, Buyer, Broker Acknowledgement (C.A.R. Form ABA).
   D. **POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

3. **TERMS OF PURCHASE AND ALLOCATION OF COSTS:** The items in this paragraph are contractual terms of the Agreement. Referenced paragraphs provide further explanation. This form is 17 pages. The Parties are advised to read all 17 pages.

| Paragraph # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|
| A | 6, 5B | Purchase Price | $ 7,400,000.00 | ☒ All Cash |
| B | | Close of Escrow (COE) | ☒ 60 Days after Acceptance OR on ☐ (date) (mm/dd/yyyy) | |
| C | 39A | Expiration of Offer | 3 calendar days after all Buyer Signature(s) or 09/22/2022 (date) at 5PM or ☐ AM/ ☐ PM | |
| D(1) | 5A(1) | Initial Deposit Amount | $ (____% of purchase price) (% number above is for calculation purposes and is not a contractual term) | within 3 (or ____) business days after Acceptance by wire transfer OR ☐ |
| D(2) | 5A(2) | ☒ Increased Deposit (Money placed into escrow after the Initial deposit. Use form DID at time increased deposit is made.) | $ 250,000.00 ( 3.4 % of purchase price) (% number above is for calculation purposes and is not a contractual term) | Upon removal of all contingencies OR ☐ (date) OR ☐ |
| E(1) | 5C(1) | Loan Amount(s): First Interest Rate Points If FHA or VA checked, Deliver list of lender required repairs | $ (____% of purchase price) Fixed rate or ☐ Initial adjustable rate; not to exceed ____% Buyer to pay zero points or up to ____% of the loan amount 17 (or ____) Days after Acceptance | Conventional or, if checked: ☐ Seller Financing ☐ Assumed Financing ☐ Subject To Financing ☐ Other: |
| E(2) | 5C(2) | Additional Financed Amount Interest Rate Points | $ (____% of purchase price) Fixed rate or ☐ Initial adjustable rate; not to exceed ____% Buyer to pay zero points or up to ____% of the loan amount | Conventional or, if checked: ☐ Seller Financing ☐ Assumed Financing ☐ Subject To Financing ☐ Other: |
| E(3) | 7A | Occupancy Type | Investment | |
| F | 5D | Balance of Down Payment | $ 7,150,000.00 | |
| | | PURCHASE PRICE TOTAL | $ 7,400,000.00 | |

© 2022, California Association of REALTORS®, Inc.

Buyer's Initials _WG_  Seller's Initials _[signature]_

CPA REVISED 6/22 (PAGE 1 OF 17)

# COMMERCIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (CPA PAGE 1 OF 17)

815 Sunset Dr.

First Republic Real Estate Inc., 5064 El Portal Dr. El Sobrante CA 34583    Phone: 4153994534    Fax:    www.lwolf.com
Lourdes Valencia    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201

DocuSign ID: 09CA9482-24BE-4C73-9SB2-9ED509F2601F

**Property Address:** *815 Sunset Dr, Antioch, CA 94509-2860*  Date: *September 8, 2022*

| | Paragraph # | Paragraph Title or Contract Term | Terms and Conditions | Additional Terms |
|---|---|---|---|---|
| G(1) | 5E | Seller Credit, if any, to Buyer | $___ (___% of purchase price) (% number above is for calculation purposes and is not a contractual term) | Seller credit to be applied to closing costs OR ☐ Other: ___ |
| G(2) | | ADDITIONAL FINANCE TERMS: | | |
| H(1) | 5B | Verification of All Cash (sufficient funds) | Attached to the offer or ☒ 3 (or 2 ) Days after Acceptance | |
| H(2) | 6A | Verification of Down Payment and Closing Costs | Attached to the offer or ☐ 3 (or ___ ) Days after Acceptance | |
| H(3) | 6B | Verification of Loan Application | Attached to the offer or ☐ 3 (or ___ ) Days after Acceptance | ☐ Prequalification ☐ Preapproval |
| J. | | Intentionally Left Blank | | |
| J. | 19 | Final Verification of Condition | 5 (or ___ ) Days prior to COE | |
| K | 26 | Assignment Request | 17 (or ___ ) Days after Acceptance | |
| **L.** | **5** | **CONTINGENCIES** | **TIME TO REMOVE CONTINGENCIES** | **CONTINGENCY REMOVED** ☒ No loan contingency |
| L(1) | 8A | Loan(s) | 17 (or ___ ) Days after Acceptance | |
| L(2) | 8B | Appraisal: Appraisal contingency based upon appraised value at a minimum of purchase price of ☐ $___ | 17 (or ___ ) Days after Acceptance | ☐ No appraisal contingency  Removal of appraisal contingency does not eliminate appraisal cancellation rights in FVAC. |
| L(3) | 8C, 15 | Investigation of Property | 17 (or 45 ) Days after Acceptance | REMOVAL OR WAIVER OF CONTINGENCY: |
| | | Informational Access to Property  Buyer's right to access the Property for informational purposes only is NOT a contingency, does NOT create cancellation rights, and applies even if contingencies are removed. | 17 (or ___ ) Days after Acceptance | Any contingency in L(1)-L(7) may be removed or waived by checking the applicable box above or attaching a Contingency Removal (C.A.R. Form CR) and checking the applicable box therein. Removal or Waiver at time of offer is against Agent advice. See paragraph 8H. |
| L(4) | 8D, 17A | Review of Seller Documents | 17 (or 45 ) Days after Acceptance, or 5 Days after receipt, whichever is later | |
| L(5) | 8E, 16A | Preliminary ("Title") Report | 17 (or 45 ) Days after Acceptance, or 5 Days after receipt, whichever is later | |
| L(6) | 8F, 11C | Common Interest Disclosures required by Civil Code § 4525 or this Agreement | 17 (or 45 ) Days after Acceptance, or 5 Days after receipt, whichever is later | ☐ CR attached |
| L(7) | 8G, 9B(6) | Review of leased or liened items (Such as for solar panels or propane tanks or PACE or HERO liens) | 17 (or 45 ) Days after Acceptance, or 5 Days after receipt, whichever is later | |
| L(8) | 8J | Sale of Buyer's Property  Sale of Buyer's property is not a contingency, UNLESS checked here: ☐ C.A.R. Form COP attached | | |
| **M.** | | **Possession** | **Time for Performance** | **Additional Terms:** |
| M(1) | | Vacant Units;  Tenant Occupied Units being delivered subject to tenant rights | Upon notice of recordation ☐ On COE date | ☐ Tenant Occupied Unit(s) to be delivered vacant (#s ___ ) |
| M(2) | 7C | Seller Occupied | Upon notice of recordation, OR ☐ 6 PM or ☐ AM/ ☐ PM  COE date or, if checked below, ☐ ___ days after COE (29 or fewer days) ☐ ___ days after COE (30 or more days) | C.A.R. Form SIP attached if 29 or fewer days. C.A.R. Form CL attached if 30 or more days. |
| **N.** | | **Documents/Fees Compliance** | **Time for Performance** | |
| N(1) | 17A | Seller Delivery of Documents | 7 (or ___ ) Days after Acceptance | |
| N(2) | 22B | Sign and return Escrow Holder General Provisions, Supplemental Instructions | 5 (or ___ ) Days after receipt | |
| N(3) | 11C(2) | Time to pay fees for ordering OA Documents | 3 (or ___ ) Days after Acceptance | |
| N(4) | 10B(1) | Install smoke alarm(s), CO detector(s), water heater bracing | 7 (or ___ ) Days after Acceptance | |
| N(5) | 35 | Evidence of representative authority | 3 Days after Acceptance | |

CPA REVISED 6/22 (PAGE 2 OF 17)    Buyer's Initials *WG* / ___    Seller's Initials ___ / ___



**COMMERCIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (CPA PAGE 2 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com    815 Sunset Dr.

DocuSign ID: 05CA9A52-24BE-4C73-9BB2-EED860F2601E                    Date: *September 8, 2022*

Property Address: *815 Sunset Dr, Antioch, CA  94509-2860*

| O. | Intentionally Left Blank | | | |
|---|---|---|---|---|
| P. | **Items Included and Excluded** | | | |
| P(1) | 9 | Items Included – All items specified in Paragraph 3B are included and the following, if checked: ☐  ☐  ☐ | | |
| P(2) | 9 | Excluded Items: ☐  ☐  ☐ | | |

| Q. | | **Allocation of Costs** | | |
|---|---|---|---|---|
| | Paragraph | Item Description | Who Pays (if items checked to be split equally unless otherwise Agreed) | Additional Terms |
| Q(1) | 10A, 11D | Natural Hazard Zone Disclosure Report, including tax information | ☐ Buyer ☒ Seller ☐ Both _____  ☐ Provided by: _____ | ☐ Environmental ☐ Other _____ |
| Q(2) | 15B(1)(D) | Environmental Survey | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(3) | | Report | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(4) | 10B(1) | Smoke alarms, CO detectors, water heater bracing | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(5) | 10A 10B(2) | Government Required Point of Sale inspections, reports | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(6) | 10B(2)(A) | Government Required Point of Sale corrective/remedial actions | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(7) | 22B | Escrow Fees | ☐ Buyer ☐ Seller ☒ Both _____  ☐ Each to pay their own fees | Escrow Holder: *First American Title/WC* |
| Q(8) | 16 | Owner's title insurance policy | ☒ Buyer ☐ Seller ☐ Both _____ | Title Company (if different from Escrow Holder): |
| Q(9) | | Buyer's Lender title insurance policy | Buyer | Unless Otherwise Agreed, Buyer shall purchase any title insurance policy insuring Buyer's lender. |
| Q(10) | | County transfer tax, fees | ☐ Buyer ☒ Seller ☐ Both _____ | |
| Q(11) | | City transfer tax, fees | ☐ Buyer ☐ Seller ☒ Both _____ | |
| Q(12) | 11C(2) | OA fee for preparing disclosures | Seller | |
| Q(13) | | OA certification fee | Buyer | |
| Q(14) | | OA transfer fees | ☐ Buyer ☐ Seller ☐ Both _____ | Unless Otherwise Agreed, Seller shall pay for separate OA move-out fee and Buyer shall pay for separate OA move-in fee. Applies if separately billed or itemized with cost in transfer fee. |
| Q(15) | | Private transfer fees | Seller, or if checked ☐ Buyer ☐ Both | |
| Q(16) | 10B(4) | Installation of safety features, required by law | ☐ Buyer ☐ Seller ☐ Both _____ | |
| Q(17) | | fees or costs | ☐ Buyer ☐ Seller ☐ Both _____ | |
| R. | | Additional Tenancy Documents: ☐ Income and Expense Statements ☐ Tenant Estoppel Certificate | | |
| S. | | OTHER TERMS: *BUYER TO PURCHASE PROPERTY IN "AS IS" PRESENT CONDITION.* | | |

**4.  PROPERTY ADDENDA AND ADVISORIES:** (check all that apply)

**A:  PROPERTY TYPE ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
☐ Probate Agreement Purchase Addendum (C.A.R. Form PA-PA)
☐ Other _____

**B.  OTHER ADDENDA:** This Agreement is subject to the terms contained in the Addenda checked below:
☐ Addendum # _____ (C.A.R. Form ADM)    ☐ Assumed Financing Addendum (C.A.R. Form AFA)
☐ Short Sale Addendum (C.A.R. Form SSA)
☐ Court Confirmation Addendum (C.A.R. Form CCA)
☐ Back Up Offer Addendum (C.A.R. Form BUO)
☐ Septic, Well, Property Monument and Propane Addendum (C.A.R. Form SWPI)
☐ Buyer Intent to Exchange Addendum (C.A.R. Form BXA)    ☐ Seller Intent to Exchange Addendum (C.A.R. Form SXA)
☐ Other _____    ☐ Other _____

CPA REVISED 6/22 (PAGE 3 OF 17)          Buyer's Initials *WG*          Seller's Initials _____

**COMMERCIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (CPA PAGE 3 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com          815 Sunset Dr.

DocuSign ID: 06CA5452-24BE-4C73-6BB2-6ED305F2601F

Date: _September 8, 2022_

Property Address: _815 Sunset Dr, Antioch, CA  94509-2860_

C.  **BUYER AND SELLER ADVISORIES:** (Note: All Advisories below are provided for reference purposes only and are not intended to be incorporated into this Agreement.)

[X] Buyer's Investigation Advisory (C.A.R. Form BIA)   [X] Fair Housing and Discrimination Advisory (C.A.R. Form FHDA)
[X] Wire Fraud Advisory (C.A.R. Form WFA)   [X] Cal. Consumer Privacy Act Advisory (C.A.R. Form CCPA)
(Parties may also receive a privacy disclosure from their own Agent.)
[ ] Wildfire Disaster Advisory (C.A.R. Form WFDA)   [ ] Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
[X] Trust Advisory (C.A.R. Form TA)   [ ] Short Sale Information and Advisory (C.A.R. Form SSIA)
[ ] REO Advisory (C.A.R. Form REO)   [ ] Probate Advisory (C.A.R. Form PA)
[ ] Other: _____   [ ] Other: _____

5.  **ADDITIONAL TERMS AFFECTING PURCHASE PRICE:** Buyer represents that funds will be good when deposited with Escrow Holder.
    A.  **DEPOSIT:**
        (1)  **INITIAL DEPOSIT:** Buyer shall deliver deposit directly to Escrow Holder. If a method other than wire transfer is specified in paragraph 3D(1) and such method is unacceptable to Escrow Holder, then upon notice from Escrow Holder, delivery shall be by wire transfer.
        (2)  **INCREASED DEPOSIT:** Increased deposit to be delivered to Escrow Holder in the same manner as the Initial Deposit. If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount by signing a new liquidated damages clause (C.A.R. Form DID) at the time the increased deposit is delivered to Escrow Holder.
        (3)  **RETENTION OF DEPOSIT:** Paragraph 36, if initialed by all Parties or otherwise incorporated into this Agreement, specifies a remedy for Buyer's default. Buyer and Seller are advised to consult with a qualified California real estate attorney before adding any other clause specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase. Any such clause shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.
    B.  **ALL CASH OFFER:** If an all cash offer is specified in paragraph 3A, no loan is needed to purchase the Property. This Agreement is NOT contingent on Buyer obtaining a loan. Buyer shall, within the time specified in **paragraph 3H(1)**, Deliver written verification of funds sufficient for the purchase price and closing costs.
    C.  **LOAN(S):**
        (1)  **FIRST LOAN:** This loan will provide for conventional financing UNLESS FHA, VA, Seller Financing (C.A.R. Form SFA), Subject To Financing, Assumed Financing, or Other is checked in **paragraph 3E(1)**.
        (2)  **ADDITIONAL FINANCED AMOUNT:** If an additional financed amount is specified in **paragraph 3E(2)**, that amount will provide for conventional financing UNLESS Seller Financing (C.A.R. Form SFA), Subject To Financing, Assumed Financing, or Other is checked in **paragraph 3E(2)**.
        (3)  **BUYER'S LOAN STATUS:** Buyer authorizes Seller and Seller's Authorized Agent to contact Buyer's lender(s) to determine the status of any Buyer's loan specified in **paragraph 3E**, or any alternate loan Buyer pursues, whether or not a contingency of this Agreement. If the contact information for Buyer's lender(s) is different from that provided under the terms of paragraph 3E, Buyer shall Deliver the updated contact information within 1 Day of Seller's request.
        (4)  **ASSUMED OR SUBJECT TO FINANCING:** Seller represents that Seller is not delinquent on any payments due on any loans. If the Property is acquired subject to an existing loan, Buyer and Seller are advised to consult with legal counsel regarding the ability of an existing lender to call the loan due, and the consequences thereof.
        (5)  Buyer shall, within the time specified in **paragraph 3E(1)**, Deliver to Seller written notice (C.A.R. Form RR or AEA) (i) of any lender requirements that Buyer requests Seller to pay for or otherwise correct or (ii) that there are no lender requirements.
    D.  **BALANCE OF PURCHASE PRICE (DOWN PAYMENT)** (including all-cash funds) to be deposited with Escrow Holder pursuant to Escrow Holder instructions.
    E.  **LIMITS ON CREDITS TO BUYER:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender, if any, and made at Close Of Escrow. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit from Seller shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

6.  **ADDITIONAL FINANCING TERMS:**
    A.  **VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Written verification of Buyer's down payment and closing costs may be made by Buyer or Buyer's lender or loan broker pursuant to **paragraph 6B.**
    B.  **VERIFICATION OF LOAN APPLICATIONS:** Buyer shall Deliver to Seller, within the time specified in **paragraph 3H(3)** a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in **paragraph 3E**. If any loan specified in **paragraph 3E** is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate.
    C.  **BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including, but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price, and to sell to Buyer in reliance on Buyer's specified financing. Buyer shall pursue the financing specified in this Agreement, even if Buyer also elects to pursue an alternative form of financing. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in this Agreement but shall not interfere with closing on the purchase price on the COE date (paragraph 3B) even if based upon alternate financing. Buyer's inability to obtain alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

7.  **CLOSING AND POSSESSION:**
    A.  **OCCUPANCY:** Buyer intends to occupy the Property as indicated in **paragraph 3E(3)**. Occupancy may impact available financing.

Buyer's Initials _WG_ / _____    Seller's Initials _____ / _____

CPA REVISED 6/22 (PAGE 4 OF 17)

**COMMERCIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (CPA PAGE 4 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com    815 Sunset Dr.-

Property Address: *815 Sunset Dr, Antioch, CA  94509-2860*                                                    Date: *September 8, 2022*

B. **CONDITION OF PROPERTY ON CLOSING:**
(1) Unless Otherwise Agreed: (i) the Property shall be delivered "As-Is" in its PRESENT physical condition as of the date of Acceptance; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Close Of Escrow or at the time possession is delivered to Buyer, if not on the same date. If items are not removed when possession is delivered to Buyer, all items shall be deemed abandoned. Buyer, after first Delivering to Seller written notice to remove the items within 3 Days, may pay to have such items removed or disposed of and may bring legal action, as per this Agreement, to receive reasonable costs from Seller.
(2) Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller and Agents may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had all required permits issued and/or finalized.

C. **SELLER REMAINING IN POSSESSION AFTER CLOSE OF ESCROW:** If Seller has the right to remain in possession after Close Of Escrow pursuant to paragraph 3M(2) or as Otherwise Agreed, the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; (ii) Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan; and (iii) consult with a qualified California real estate attorney where the Property is located to determine the ongoing rights and responsibilities of both Buyer and Seller with regard to each other, including possible tenant rights, and what type of written agreement to use to document the relationship between the Parties.

D. **At Close Of Escrow:** (i) Seller assigns to Buyer any assignable warranty rights for items included in the sale; and (ii) Seller shall Deliver to Buyer available Copies of any such warranties. Agents cannot and will not determine the assignability of any warranties.

E. Seller shall, on Close Of Escrow unless Otherwise Agreed and even if Seller remains in possession, provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems, intranet and Internet-connected devices included in the purchase price, garage door openers, and all items included in either paragraph 3P or paragraph 9. If the Property is a condominium or located in a common interest development, Seller shall be responsible for securing or providing any such items for Association amenities, facilities, and access. Buyer may be required to pay a deposit to the Owners' Association ("OA") to obtain keys to accessible OA facilities.

8. **CONTINGENCIES AND REMOVAL OF CONTINGENCIES:**
A. **LOAN(S):**
(1) This Agreement is, unless otherwise specified in paragraph 3L(1) or an attached CR form, contingent upon Buyer obtaining the loan(s) specified. If contingent, Buyer shall act diligently and in good faith to obtain the designated loan(s). If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan and Buyer is able to satisfy lender's non-appraisal conditions for closing the loan.
(2) Buyer is advised to investigate the insurability of the Property as early as possible, as this may be a requirement for lending. Buyer's ability to obtain insurance for the Property, including fire insurance, is part of Buyer's Investigation of Property contingency. Failure of Buyer to obtain insurance may justify cancellation based on the Investigation contingency but not the loan contingency.
(3) Buyer's contractual obligations regarding deposit, balance of down payment and closing costs are not contingencies of this Agreement, unless Otherwise Agreed.
(4) If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.
(5) NO LOAN CONTINGENCY: If "No loan contingency" is checked in paragraph 3L(1), obtaining any loan specified is NOT a contingency of this Agreement. If Buyer does not obtain the loan specified, and as a result is unable to purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

B. **APPRAISAL:**
(1) This Agreement is, unless otherwise specified in paragraph 3L(2) or an attached CR form, contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the amount specified in paragraph 3L(2), without requiring repairs or improvements to the Property. Appraisals are often a reliable source to verify square footage of the subject Property. However, the ability to cancel based on the measurements provided in an appraisal falls within the Investigation of Property contingency. The appraisal contingency is solely limited to the value determined by the appraisal. For any cancellation based upon this appraisal contingency, Buyer shall Deliver a Copy of the written appraisal to Seller, upon request by Seller.
(2) NO APPRAISAL CONTINGENCY: If "No appraisal contingency" is checked in paragraph 3L(2), then Buyer may not use the loan contingency specified in paragraph 3L(1) to cancel this Agreement if the sole reason for not obtaining the loan is that the appraisal relied upon by Buyer's lender values the property at an amount less than that specified in paragraph 3L(2). If Buyer is unable to obtain the loan specified solely for this reason, Seller may be entitled to Buyer's deposit or other legal remedies.
(3) ☒ Fair Appraisal Act: The Parties acknowledge receipt of the attached Fair Appraisal Act Addendum (C.A.R. Form FAAA).

C. **INVESTIGATION OF PROPERTY:** This Agreement is, as specified in paragraph 3L(3), contingent upon Buyer's acceptance of the condition of, and any other matter affecting, the Property.

D. **REVIEW OF SELLER DOCUMENTS:** This Agreement is, as specified in paragraph 3L(4), contingent upon Buyer's review of Seller's documents required in paragraph 16A.

E. **TITLE:**
(1) This Agreement is, as specified in paragraph 3L(5), contingent upon Buyer's ability to obtain the title policy provided for in paragraph 16G and on Buyer's review of a current Preliminary Report and items that are disclosed or observable even if not on record or not specified in the Preliminary Report, and satisfying Buyer regarding the current status of title. Buyer is advised to review all underlying documents and other matters affecting title, including, but not limited to, any documents or deeds referenced in the Preliminary Report and any plotted easements.
(2) Buyer has 5 Days after receipt to review a revised Preliminary Report, if any, furnished by the Title Company and cancel the transaction if the revised Preliminary Report reveals material or substantial deviations from a previously provided Preliminary Report.

F. **CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES (IF APPLICABLE):** This Agreement is, as specified in paragraph 3L(6), contingent upon Buyer's review of Common Interest Disclosures required by Civil Code § 4525 and under paragraph 11C ("CI Disclosures").

CPA REVISED 6/22 (PAGE 5 OF 17)                  Buyer's Initials [ WG ]          Seller's Initials [ ___ ]

**COMMERCIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (CPA PAGE 5 OF 17)**

DocuSign ID: 06CA9462-2A5E-4C73-8BB2-4ED809F2601F
Property Address: *815 Sunset Dr, Antioch, CA. 94509-2860*                                    Date: *September 8, 2022*

G. **BUYER REVIEW OF LEASED OR LIENED ITEMS CONTINGENCY:** Buyer's review of and ability and willingness to assume any lease, maintenance agreement or other ongoing financial obligation, or to accept the Property subject to any lien, disclosed pursuant to paragraph 9B(6), is, as specified in paragraph 3L(7), a contingency of this Agreement. Any assumption of the lease shall not require any financial obligation or contribution by Seller. Seller, after first Delivering a Notice to Buyer to Perform, may cancel this Agreement if Buyer, by the time specified in paragraph 3L(7), refuses to enter into any necessary written agreements to accept responsibility for all obligations of Seller disclosed, leased or liened items.

H. **REMOVAL OR WAIVER OF CONTINGENCIES WITH OFFER:** Buyer shall have no obligation to remove a contractual contingency unless Seller has provided all required documents, reports, disclosures, and information pertaining to that contingency. If Buyer does remove a contingency without first receiving all required information from Seller, Buyer is relinquishing any contractual rights that apply to that contingency. If Buyer removes or waives any contingencies without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Agent.

I. **REMOVAL OF CONTINGENCY OR CANCELLATION:**
   (1) For any contingency specified in paragraph 3L or 8, Buyer shall, within the applicable period specified, remove the contingency or cancel this Agreement.
   (2) For the contingencies for review of Seller Documents, Preliminary Report, and Condominium/Planned Development Disclosures, Buyer shall, within the time specified in paragraph 3L or 5 Days after receipt of the applicable Seller Documents, Preliminary Report, or Cl Disclosures, whichever occurs later, remove the applicable contingency in writing or cancel this Agreement.
   (3) If Buyer does not remove a contingency within the time specified, Seller, after first giving Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), shall have the right to cancel this Agreement.

J. **SALE OF BUYER'S PROPERTY:** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer unless the Sale of Buyer's Property (C.A.R. Form COP) is checked as a contingency of this Agreement in paragraph 3L(8).

9. **ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**
A. **NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the Multiple Listing Service (MLS), flyers, marketing materials, or disclosures are NOT included in the purchase price or excluded from the sale unless specified in this paragraph or paragraph 3P or as Otherwise Agreed. Any items included herein are components of the Property and are not intended to affect the price. All items are transferred without Seller warranty.

B. **ITEMS INCLUDED IN SALE:**
   (1) All EXISTING fixtures and fittings that are attached to the Property;
   (2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances and appliances for which special openings or encasements have been made (whether or not included in paragraph 3P), window and door screens, awnings, shutters, window coverings (which includes blinds, curtains, drapery, shutters or any other materials that cover any portion of the window), attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment (including, but not limited to, any cleaning equipment such as motorized/automatic pool cleaners, pool nets, pool covers), garage door openers/remote controls, mailbox, in-ground landscaping, water features and fountains, water softeners, water purifiers, light bulbs (including smart bulbs) and all items specified as included in paragraph 3P, if currently existing and owned by Seller at the time of Acceptance.
   **Note:** If Seller does not intend to include any item specified as being included above because it is not owned by Seller, whether placed on the Property by Agent, stager, tenant, or other third party, the item should be listed as being excluded in paragraph 3P(2) or excluded by Seller in a counter offer.
   (3) Security System includes any devices, hardware, software, or control units used to monitor and secure the Property, including but not limited to, any motion detectors, door or window alarms, and any other equipment utilized for such purpose. If checked in paragraph 3P, all such items are included in the sale, whether hard wired or not. Buyer is advised to use paragraph 3P(1) or an addendum to address more directly specific items to be included. Seller is advised to use a counter offer to address more directly any items to be excluded.
   (4) Home Automation (Smart Home Features) includes any electronic devices and features including, but not limited to, thermostat controls, kitchen appliances not otherwise excluded, and lighting systems, that are connected (hard wired or wirelessly) to a control unit, computer, tablet, phone, or other "smart" device. Any Smart Home devices and features that are physically affixed to the real property, and also existing light bulbs, are included in the sale. Buyer is advised to use a paragraph 3P(1) or an addendum to address more directly specific items to be included. Seller is advised to use a counter offer to address more directly any items to be excluded.
   (5) Non-Dedicated Devices: All smart home and security system control devices are included in the sale, except for any non-dedicated personal computer, tablet or phone used to control such features. Buyer acknowledges that a separate device and access to wifi or Internet may be required to operate some smart home features and Buyer may have to obtain such device after Close Of Escrow. Buyer is advised to change all passwords and ensure the security of any smart home features.
   (6) LEASED OR LIENED ITEMS AND SYSTEMS: Seller, within the time specified in paragraph 3N(1), shall (i) disclose to Buyer if any item or system specified in paragraph 3P or 9B or otherwise included in the sale is leased, or not owned by Seller, or is subject to any maintenance or other ongoing financial obligation, or specifically subject to a lien or other encumbrance or loan, and (ii) Deliver to Buyer all written materials (such as lease, warranty, financing, etc.) concerning any such item.
   (7) Seller represents that all items included in the purchase price, unless Otherwise Agreed, (i) are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to paragraph 9B(6), and (ii) are transferred without Seller warranty regardless of value. Seller shall cooperate with the identification of any software or applications and Buyer's efforts to transfer any services needed to operate any Smart Home Features or other items included in this Agreement, including, but not limited to, utilities or security systems.
   (8) A complete inventory of all personal property of Seller currently used in the operation of the Property and included in the purchase price shall be delivered to Buyer within the time specified in paragraph 3N(1).
   (9) Seller shall deliver title to the personal property by Bill of Sale, free of all liens and encumbrances, and without warranty of condition.
   (10) As additional security for any note in favor of Seller for any part of the purchase price, Buyer shall execute a UCC-1 Financing Statement to be filed with the Secretary of State, covering the personal property included in the purchase, replacement thereof, and insurance proceeds.

Buyer's Initials [WG] / ____    Seller's Initials [LCA-S] / ____    

CPA REVISED 6/22 (PAGE 6 OF 17)

**COMMERCIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (CPA PAGE 6 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com                815 Sunset Dr.

ItemSign ID: 06CA9482-24BE-4C73-8BB2-6ED309F2601F

Property Address: *815 Sunset Dr, Antioch, CA 94509-2860*                                    Date: *September 8, 2022*

C.  ITEMS EXCLUDED FROM SALE: Unless Otherwise Agreed, the following items are excluded from sale: (i) All items specified in paragraph 3P(2); (ii) audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; (iii) furniture and other items secured to the Property for earthquake or safety purposes. Unless otherwise specified in paragraph 3P(1), brackets attached to walls, floors or ceilings for any such component, furniture or item will be removed and holes or other damage shall be repaired, but not painted.

10. ALLOCATION OF COSTS:
A.  INSPECTIONS, REPORTS AND CERTIFICATES: Paragraphs 3Q(1-3) and (5) only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; it does not determine who is to pay for any work recommended or identified in the Report. Agreements for payment of required work should be specified elsewhere in paragraph 3Q, or 3S, or in a separate agreement (such as C.A.R. Forms RR, RRRR, ADM or AEA).
B.  GOVERNMENT REQUIREMENTS AND CORRECTIVE OR REMEDIAL ACTIONS:
    (1)  LEGALLY REQUIRED INSTALLATIONS AND PROPERTY IMPROVEMENTS: Any required installation of smoke alarm or carbon monoxide device(s) or securing of water heater shall be completed within the time specified in paragraph 3N(4). If Buyer is to pay for these items, Buyer, as instructed by Escrow Holder, shall deposit funds into escrow or directly to the vendor completing the repair or installation. Prior to Close Of Escrow, Seller shall Deliver to Buyer written statement(s) of compliance in accordance with any Law, unless Seller is exempt. If Seller is to pay for these items and does not fulfill Seller's obligation in the time specified, and Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for Buyer's costs.
    (2)  POINT OF SALE REQUIREMENTS:
        (A)  Point of sale inspections, reports and repairs refer to any such actions required to be completed before or after Close Of Escrow that are required in order to close under any Law. Unless Parties Otherwise Agree to another time period, any such repair, shall be completed prior to final verification of Property. If Buyer agrees to pay for any portion of such repair, Buyer, shall (i) directly pay to the vendor completing the repair or (ii) provide an invoice to Escrow Holder, deposit funds into escrow sufficient to pay for Buyer's portion of such repair and request Escrow Holder pay the vendor completing the repair.
        (B)  Buyer shall be provided, within the time specified in paragraph 3N(1), unless Parties Otherwise Agree to another time period, a Copy of any required government-conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.
    (3)  REINSPECTION FEES: If any repair in paragraph 10B(1) is not completed within the time specified and the lender requires an additional inspection to be made, Seller shall be responsible for any corresponding reinspection fee. If Buyer incurs costs to comply with lender requirements concerning those items, Seller shall be responsible for those costs.
    (4)  INSTALLATION OF SAFETY FEATURES:
        (A)  The following installations shall be completed prior to final verification of condition unless Otherwise Agreed: (i) approved fire extinguisher(s), sprinkler(s), and hose(s), if required by law; and (ii) drain cover and anti-entrapment device or system meeting the minimum requirements permitted by the U.S. Consumer Products and Safety Commission for any pool or spa.
        (B)  If Buyer is to pay for these installations, Buyer, as instructed by Escrow Holder, shall deposit funds into escrow or directly to the vendor completing the installation.
    (5)  INFORMATION AND ADVICE ON REQUIREMENTS: Buyer and Seller are advised to seek information from a knowledgeable source regarding local and State mandates and whether they are point of sale requirements or requirements of ownership. Agents do not have expertise in this area and cannot ascertain all of the requirements or costs of compliance.

11. SELLER DISCLOSURES
A.  WITHHOLDING TAXES: Buyer and Seller hereby instruct Escrow Holder to withhold the applicable required amounts to comply with federal and California withholding Laws and forward such amounts to the Internal Revenue Service and Franchise Tax Board, respectively. However, no federal withholding is required if, prior to Close Of Escrow, Seller Delivers (i) to Buyer and Escrow Holder a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law (FIRPTA); OR (ii) to a qualified substitute (usually a title company or an independent escrow company) a fully completed affidavit (C.A.R. Form AS) sufficient to avoid withholding pursuant to federal withholding Law AND the qualified substitute Delivers to Buyer and Escrow Holder an affidavit signed under penalty of perjury (C.A.R. Form QS) that the qualified substitute has received the fully completed Seller's affidavit and the Seller states that no federal withholding is required; OR (iii) to Buyer other documentation satisfying the requirements under Internal Revenue Code § 1445 (FIRPTA). No withholding is required under California Law if, prior to Close Of Escrow, Escrow Holder has received sufficient documentation from Seller that no withholding is required, and Buyer has been informed by Escrow Holder.
B.  NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES: This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at http://www.npms.phmsa.dot.gov/. To seek further information about possible transmission pipelines near the Property, you may contact your local gas or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Website. (Neither Seller nor Agent are required to check this website. If Buyer wants further information, Agent recommends that Buyer obtain information from this website during Buyer's investigation contingency period. Agents do not have expertise in this area.)
C.  CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:
    (1)  Seller shall, within the time specified in paragraph 3N(1), disclose to Buyer whether the Property is a condominium or is located in a planned development, other common interest development, or otherwise subject to covenants, conditions, and restrictions (C.A.R. Form SPQ or ESD).
    (2)  If the Property is a condominium or is located in a planned development or other common interest development with a OA, Seller shall, within the time specified in paragraph 3N(3), order from, and pay any required fee for the following items to the OA (C.A.R. Form HOA-IR): (i) Copies of any documents required by Law (C.A.R. Form HOA-RS); (ii) disclosure of any pending or anticipated claim or litigation by or against the OA; (iii) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of OA minutes for regular and special meetings; (v) the names and contact information of all OAs governing the Property; (vi) pet restrictions; and (vii) smoking restrictions ("CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the OA and any CI Disclosures in Seller's possession. Seller shall, as directed by Escrow Holder, deposit funds into escrow or direct to OA or management company to pay for any of the above.

CPA REVISED 6/22 (PAGE 7 OF 17)          Buyer's Initials [ WG ] /          Seller's Initials [ W___ ] ___

**COMMERCIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (CPA PAGE 7 OF 17)**

DocuSign ID: 08CA9482-24BE-4C73-8B82-6ED609E26B1F

Property Address: **815 Sunset Dr, Antioch, CA  94509-2860**                                           Date: **September 8, 2022**

D. **NATURAL AND ENVIRONMENTAL HAZARDS:** Seller shall, within the time specified in paragraph 3N(1), if required by Law: (i) Deliver to Buyer the earthquake guide and environmental hazards booklet, and for all residential property with 1-4 units and any manufactured or mobile home built before January 1, 1960, fully complete and Deliver the Residential Earthquake Risk Disclosure Statement; and (ii) even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and (iii) disclose any other zone as required by Law and provide any other information required for those zones.

E. **WATER CONSERVING PLUMBING DEVICES:** Civil Code § 1101.5 requires all multi-family residential and commercial real property be equipped with water-conserving plumbing devices. Seller shall, within the time specified in **paragraph 3N(1)**, disclose in writing whether the property includes any noncompliant plumbing fixtures. Seller may use C.A.R. Form SPQ or ESD. See C.A.R. Form WCMD for more information.

F. **SURVEY, PLANS, AND ENGINEERING DOCUMENTS:** Seller, within the time specified in **paragraph 3N(1)**, shall provide to Buyer, Copies of surveys, plans, specifications, and engineering documents, if any, prepared on Seller's behalf on in Seller's possession.

G. **PERMITS:** Seller, within the time specified in **paragraph 3N(1)**, shall provide to Buyer, if in Seller's possession, copies of all permits and approvals, certificates of occupancy, conditional use permits, development plans, and licenses and permits pertaining to the operation of the Property.

H. **STRUCTURAL MODIFICATIONS:** Seller, within the time specified in **paragraph 3N(1)**, shall in writing disclose to Buyer, known structural additions or alterations to, or the installation, alteration, repair or replacement of, significant components of the structure(s) upon the Property.

I. **GOVERNMENTAL COMPLIANCE:** Within the time specified in **paragraph 3N(1)**,
   (1) Seller shall disclose to Buyer any improvements, additions, alterations, or repairs to the Property made by Seller, or known to Seller to have been made, without required governmental permits, final inspections, and approvals.
   (2) Seller shall disclose to Buyer if Seller has actual knowledge of any notice of violations of Law filed or issued against the Property.

J. **VIOLATION NOTICES:** Within the time specified in **paragraph 3N(1)**, Seller shall disclose any notice of violations of any Law filed or issued against the Property and actually known to Seller

K. **KNOWN MATERIAL FACTS:** Seller shall, within the time specified in **paragraph 3N(1)**, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS** affecting the Property, including, but not limited to, known insurance claims within the past five years, or provide Buyer with permission to contact lender to get such information (C.A.R. Form ARC), and make any and all other disclosures required by Law.

L. **SUBSEQUENT DISCLOSURES:** In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information, or representations previously provided to Buyer, Seller shall promptly Deliver a subsequent or amended disclosure or notice, in writing, covering those items. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware or which are disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.

12. **TENANCY RELATED DISCLOSURES:** Within the time specified in paragraph 3N(1), and subject to Buyer's right of review, Seller shall disclose, make available or Deliver, as applicable, to Buyer, the following information:

A. **RENTAL/SERVICE AGREEMENTS:** (i) All current leases, rental agreements, service contracts, and other agreements pertaining to the operation of the Property; (ii) A rental statement including names of tenants, rental rates, period or rental, date of last rent increase, security deposits, rental concessions, rebates or other benefits, if any, and a list of delinquent rents and their duration. Seller represents that no tenant is entitled to any rebate, concession, or other benefit, except as set forth in these documents. Seller represents that the documents to be furnished are those maintained in the ordinary and normal course of business.

B. **INCOME AND EXPENSE STATEMENTS:** If checked in **paragraph 3R**, the books and records for the Property, if any, including a statement of income and expense for the 12 months preceding Acceptance. Seller represents that the books and records are those maintained in the ordinary and normal course of business and used by Seller in the computation of federal and state income tax returns.

C. **TENANT ESTOPPEL CERTIFICATES:** If checked in **paragraph 3R**, Tenant Estoppel Certificates (C.A.R. Form TEC). Tenant Estoppel Certificates shall be completed by Seller or Seller's agent and delivered to tenant(s) for tenant(s) to sign and acknowledge: (i) that tenant(s)' rental or lease agreements are unmodified and in full force and effect, (or if modified, stating all such modifications); (ii) that no lessor defaults exist; and (iii) stating the amount of any prepaid rent or security deposit. Seller shall exercise good faith to obtain tenant(s)' signature(s), but Seller cannot guarantee tenant(s)' cooperation. In the event Seller cannot obtain signed Tenant Estoppel Certificates within the time specified above, Seller shall notify Buyer and provide the unsigned one that was provided to tenant(s). If, after the time specified for Seller to Deliver the TEC to Buyer, any tenant(s) sign and return a TEC to Seller, Seller shall Deliver that TEC to Buyer.

D. **SELLER REPRESENTATIONS:** Unless otherwise disclosed under paragraph 11, paragraph 12, or under any disclosure Delivered to Buyer:
   (1) Seller represents that Seller has no actual knowledge that any tenant(s): (i) has any current pending lawsuit(s), investigation(s), inquiry(ies), action(s), or other proceeding(s) affecting the Property of the right to use and occupy it; (ii) has any unsatisfied mechanics or materialman lien(s) affecting the Property; and (iii) is the subject of a bankruptcy. If Seller receives any such notice, prior to Close Of Escrow, Seller shall immediately notify Buyer.
   (2) Seller represents that no tenant is entitled to any rebate, concessions, or other benefit, except as set forth in the rental service agreements.
   (3) Seller represents that the documents to be furnished are those maintained in the ordinary and normal course of business and the income and expense statements are and used by Seller in the computation of federal and state income tax returns.

13. **CHANGES DURING ESCROW:**
A. Prior to Close Of Escrow, Seller may engage in the following acts ("Proposed Changes"), subject to Buyer's rights in paragraph 13B: (i) rent or lease any vacant unit or other part of the premises; (ii) alter, modify, or extend any existing rental or lease agreement; (iii) enter into, alter, modify, or extend any service contract(s); or (iv) change the status of the condition of the Property.
B. (1) At least 7 Days prior to any Proposed Changes, Seller shall Deliver written notice to Buyer of such Proposed Change
   (2) Within 5 Days after receipt of such notice, Buyer, in writing, may give Seller notice of Buyer's objection to the Proposed Changes in which case Seller shall not make the Proposed Changes.

14. **SECURITY DEPOSITS:** Security deposits, if any, to the extent they have not been applied by Seller in accordance with any rental agreement and current Law, shall be transferred to Buyer on Close Of Escrow. Seller shall notify each tenant, in compliance with the California Civil Code.

CPA REVISED 8/22 (PAGE 8 OF 17)                Buyer's Initials [WG] ____        Seller's Initials ____ ____

**COMMERCIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (CPA PAGE 8 OF 17)**

DocuSign ID: 06CA5482-24BE-4C73-8BB2-BED803F2601F

Property Address: 815 Sunset Dr, Antioch, CA  94509-2860                Date: September 8, 2022

**15.** BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:

    **A.** Buyer shall, within the time specified in paragraph 3L(3), have the right, at Buyer's expense unless otherwise Agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations").

    **B.** Buyer Investigations include, but are not limited to:

        (1) Inspections regarding any physical attributes of the Property or items connected to the Property, such as:

            (A) A general inspection.

            (B) An inspection for lead-based paint and other lead-based paint hazards.

            (C) An inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company, shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2).

            (D) A phase one environmental survey, paid for and obtained by the party indicated in paragraph 3Q(2). If Buyer is responsible for obtaining and paying for the survey, Buyer shall act diligently and in good faith to obtain such survey within the time specified in paragraph 3L(3). Buyer has 5 Days after receiving the survey to remove this portion of the Buyer's Investigation contingency.

        (2) All other Buyer Investigations, such as insurance, not specified above. See, Buyer's Investigation Advisory (C.A.R. Form BIA) for more.

        (3) A review of reports, disclosures or information prepared by or for Seller and Delivered to Buyer pursuant to paragraphs 3, 10, 11, 12, and 16A.

    **C.** Without Seller's prior written consent, Buyer shall neither make nor cause to be made: (i) invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report, which shall not include any holes or drilling through stucco or similar material; or (ii) inspections by any governmental building or zoning inspector or government employee, unless required by Law.

    **D.** Seller shall make the Property available for all Buyer Investigations. Seller is not obligated to move any existing personal property. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is delivered to Buyer. Buyer shall, (i) by the time specified in paragraph 3L(3), complete Buyer Investigations and satisfy themselves as to the condition of the Property, and either remove the contingency or cancel this Agreement, and (ii) by the time specified in paragraph 3L(3) or 3 Days after receipt of any Investigation report, whichever is later, give Seller at no cost, complete Copies of all such reports obtained by Buyer, which obligation shall survive the termination of this Agreement. This Delivery of Copies of all such reports shall not include any appraisal, except an appraisal received in connection with an FHA or VA loan.

    **E.** Buyer indemnity and Seller protection for entry upon the Property: Buyer shall: (i) keep the Property free and clear of liens; (ii) repair all damage arising from Buyer Investigations; and (iii) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**16.** TITLE AND VESTING:

    **A.** Buyer shall, within the time specified in paragraph 3N(1), be provided a current Preliminary Report by the person responsible for paying for the title report in paragraph 3Q(8). If Buyer is responsible for paying, Buyer shall act diligently and in good faith to obtain such Preliminary Report within the time specified. The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities.

    **B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing. For any lien or matter not being transferred upon sale, Seller will take necessary action to deliver title free and clear of such lien or matter.

    **C.** Seller shall within 7 Days after request, give Escrow Holder necessary information to clear title.

    **D.** Seller shall, within the time specified in paragraph 3N(1), disclose to Buyer all matters known to Seller affecting title, whether of record or not.

    **E.** If Buyer is a legal entity and the Property purchase price is at least $300,000 and the purchase price is made without a bank loan or similar form of external financing, a Geographic Targeting Order (GTO) issued by the Financial Crimes Enforcement Network, U.S. Department of the Treasury, requires title companies to collect and report certain information about the Buyer, depending on where the Property is located. Buyer agrees to cooperate with the title company's effort to comply with the GTO.

    **F.** Buyer shall, after Close Of Escrow, receive a recorded grant deed or any other conveyance document required to convey title (For example, for stock cooperative or tenancy in common, respectively, an assignment of stock certificate or assignment of seller's interest in the real property), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's vesting instructions. The recording document shall contain Buyer's post-closing mailing address to enable Buyer's receipt of the recorded conveyance document from the County Recorder. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

    **G.** Buyer shall receive a Standard Coverage Owner's CLTA policy of title insurance. An ALTA policy or the addition of endorsements may provide greater coverage for Buyer. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and shall pay any increase in cost

CPA REVISED 6/22 (PAGE 9 OF 17)          Buyer's Initials [WG]  /          Seller's Initials [____] /  [____]

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com          815 Sunset Dr.

DocuSign ID: 08CA5482-24BE-4C73-6B82-6ED408F2601F

Date: *September 8, 2022*

Property Address: *815 Sunset Dr, Antioch, CA  94509-2660*

17. **TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS:** The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).

A. **SELLER DELIVERY OF DOCUMENTS:** Seller shall, within the time specified in paragraph 3N(1), Deliver to Buyer all reports, disclosures and information ("Reports") for which Seller is responsible as specified in paragraphs 9B(6), 9B(8), 10, 11A, 11C, 11D, 11F-K, 12, 16A, and 16D.

B. **BUYER REVIEW OF DOCUMENTS; REPAIR REQUEST; CONTINGENCY REMOVAL OR CANCELLATION:**
   (1) Buyer has the time specified in paragraph 3 to complete Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 9B(6), and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property.
   (2) Buyer may, within the time specified in paragraph 3L(3), request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests (C.A.R. Form RR or RRRR). If Seller does not agree or does not respond, Buyer is not contractually entitled to have the repairs or other requests made and may only cancel based on contingencies in this Agreement.
   (3) Buyer shall, by the end of the times specified in paragraph 3L (or as Otherwise Agreed), Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement (C.A.R. Form CR or CC). However, if any report, disclosure, or information for which Seller is responsible, is not Delivered within the time specified in paragraph 3N(1), then Buyer has 5 Days after Delivery of any such items, or the times specified in paragraph 3L, whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement. If Delivery of any Report occurs after a contractual contingency pertaining to that Report has already been waived or removed, the Delivery of the Report does not revive the contingency but there may be a right to terminate for a subsequent or amended disclosure under paragraph 11L.
   (4) Continuation of Contingency: Even after the end of the time specified in paragraph 3L and before Seller cancels, if at all, pursuant to paragraph 17C, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 17C(1).

C. **SELLER RIGHT TO CANCEL:**
   (1) **SELLER RIGHT TO CANCEL; BUYER CONTINGENCIES:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.
   (2) **SELLER RIGHT TO CANCEL; BUYER CONTRACT OBLIGATIONS:** Seller, after first Delivering to Buyer a Notice to Buyer to Perform, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): (i) Deposit funds as required by paragraph 3D(1) or 3D(2) or if the funds deposited pursuant to paragraph 3D(1) or 3D(2) are not good when deposited; (ii) Deliver updated contact information for Buyer's lender(s) as required by paragraph 5C(3); (iii) Deliver a notice of FHA or VA costs or terms, if any, as specified by paragraph 5C(5) (C.A.R. Form RR); (iv) Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by paragraph 5B or 6A; (v) Deliver a letter as required by paragraph 6B; (vi) In writing assume or accept leases or liens specified in paragraph 8G; (vii) Cooperate with the title company's effort to comply with the GTO as required by paragraph 16E; (viii) Sign or initial a separate liquidated damages form for an increased deposit as required by paragraph 5A(2) and 36; (ix) Provide evidence of authority to Sign in a representative capacity as specified in paragraph 35; or (x) Perform any additional Buyer contractual obligation(s) included in this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees allocated to Seller in this Agreement and already paid by Escrow prior to cancellation of this Agreement and notification to Escrow.
   (3) **SELLER RIGHT TO CANCEL; SELLER CONTINGENCIES:** Seller may cancel this Agreement by good faith exercise of any Seller contingency included in this Agreement, or Otherwise Agreed, so long as that contingency has not already been removed or waived in writing.

D. **BUYER RIGHT TO CANCEL:**
   (1) **BUYER RIGHT TO CANCEL; SELLER CONTINGENCIES:** If, by the time specified in this Agreement, Seller does not Deliver to Buyer a removal of the applicable contingency or cancellation of this Agreement, then Buyer, after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees allocated to Seller in this Agreement and already paid by Escrow prior to cancellation of this Agreement and notification to Escrow.
   (2) **BUYER RIGHT TO CANCEL; SELLER CONTRACT OBLIGATIONS:** If, by the time specified, Seller has not Delivered any item specified in paragraph 3N(1) or Seller has not performed any Seller contractual obligation included in this Agreement by the time specified, Buyer, after first Delivering to Seller a Notice to Seller to Perform, may cancel this Agreement.
   (3) **BUYER RIGHT TO CANCEL; BUYER CONTINGENCIES:** Buyer may cancel this Agreement by good faith exercise of any Buyer contingency included in paragraph 8, or Otherwise Agreed, so long as that contingency has not already been removed in writing.

E. **NOTICE TO BUYER OR SELLER TO PERFORM:** The Notice to Buyer to Perform or Notice to Seller to Perform shall: (i) be in writing; (ii) be Signed by the applicable Buyer or Seller; and (iii) give the other Party at least 2 Days after Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform or Notice to Seller to Perform may not be Delivered any earlier than 2 Days prior to the Scheduled Performance Day to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 17, whether or not the Scheduled Performance Day falls on a Saturday, Sunday or legal holiday. If a Notice to Buyer to Perform or Notice to Seller to Perform is incorrectly Delivered or specifies a time less than the agreed time, the notice shall be deemed invalid and void and Seller or Buyer shall be required to Deliver a new Notice to Buyer to Perform or Notice to Seller to Perform with the specified timeframe.

F. **EFFECT OF REMOVAL OF CONTINGENCIES:**
   (1) **REMOVAL OF BUYER CONTINGENCIES:** If Buyer removes any contingency or cancellation rights, unless Otherwise Agreed, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for the non-delivery of any reports, disclosures or information outside of Seller's control and for any Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.
   (2) **REMOVAL OF SELLER CONTINGENCIES:** If Seller removes any contingency or cancellation rights, unless Otherwise Agreed, Seller shall conclusively be deemed to have: (i) satisfied themselves regarding that contingency; (ii) elected to proceed with the transaction; and (iii) given up any right to cancel this Agreement based on such contingency.

CPA REVISED 6/22 (PAGE 10 OF 17)     Buyer's Initials  WG /          Seller's Initials

**COMMERCIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (CPA PAGE 10 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com        815 Sunset Dr.

DocuSign ID: 04CA5A82-24BE4C73-8BB2-6ED609F2601F

Date: September 8, 2022

Property Address: 815 Sunset Dr, Antioch, CA  94509-2860

G. **DEMAND TO CLOSE ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a Demand to Close Escrow (C.A.R. Form DCE). The DCE shall: (i) be Signed by the applicable Buyer or Seller; and (ii) give the other Party at least 3 Days after Delivery to close escrow. A DCE may not be Delivered any earlier than 3 Days prior to the Scheduled Performance Day for the Close Of Escrow. If a DCE is incorrectly Delivered or specifies a time less than the agreed time, the DCE shall be deemed invalid and void and Seller or Buyer shall be required to Deliver a new DCE.

H. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign and Deliver mutual instructions to cancel the sale and escrow and release deposits, if any, to the Party entitled to the funds, less (i) fees and costs paid by Escrow Holder on behalf of that Party, if required by this Agreement; and (ii) any escrow cancellation fee charged to that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. A release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award. A Party may be subject to a civil penalty of up to $1,000 for refusal to Sign cancellation instructions if no good faith dispute exists as to which Party is entitled to the deposited funds (Civil Code § 1057.3). Note: Neither Agents nor Escrow Holder are qualified to provide any opinion on whether either Party has acted in good faith or which Party is entitled to the deposited funds. Buyer and Seller are advised to seek the advice of a qualified California real estate attorney regarding this matter.

18. **REPAIRS:** Repairs shall be completed prior to final verification of condition unless Otherwise Agreed. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. Buyer acknowledges that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain invoices and paid receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

19. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property condition within the time specified in paragraph 3J, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 7B; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

20. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless Otherwise Agreed, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, Seller rental payments, OA regular assessments due prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. Seller shall pay any OA special or emergency assessments due prior to Close Of Escrow. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and OA special or emergency assessments that are due after Close Of Escrow. Property will be reassessed upon change of ownership. Any supplemental tax bills delivered to Escrow Holder prior to closing shall be prorated and paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). Seller agrees all service fees, maintenance costs and utility bills will be paid current up and through the date of Close Of Escrow. TAX BILLS AND UTILITY BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

21. **BROKERS AND AGENTS:**

A. **COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.

B. **SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Agent: (i) Does not decide what price Buyer should pay or Seller should accept; (ii) Does not guarantee the condition of the Property; (iii) Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; (iv) Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; (v) Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Agent; (vi) Shall not be responsible for inspecting public records or permits concerning the title or use of Property; (vii) Shall not be responsible for identifying the location of boundary lines or other items affecting title; (viii) Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; (ix) Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; (x) Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and (xi) Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

C. **BROKERAGE:** Neither Buyer nor Seller has utilized the services of, or for any other reason owes compensation to, a licensed real estate broker (individual or corporate), agent, finder, or other entity, other than as specified in this Agreement, in connection with any act relating to the Property, including, but not limited to, inquiries, introductions, consultations, and negotiations leading to this Agreement. Buyer and Seller each agree to indemnify and hold the other, the Brokers specified herein and their agents, harmless from and against any costs, expenses or liability for compensation claimed inconsistent with the warranty and representation in this paragraph.

22. **JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3A, 3B, 3D-G, 3N(2), 3Q, 3S, 4A, 4B, 5A(1-2) 5D, 5E, 10B(2)(A), 10B(3), 11A, 11C(2), 16 (except 16D), 17H, 20, 21A, 22, 26, 32, 33, 34, 35, 39, 40, and paragraph 3 of the Real Estate Brokers Section. If a Copy of the separate compensation agreement(s) provided for in paragraph 21A or paragraph 3 of the Real Estate Brokers Section is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned.

Buyer's Initials WG _____     Seller's Initials _____ _____

CPA REVISED 6/22 (PAGE 11 OF 17)

**COMMERCIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (CPA PAGE 11 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com     815 Sunset Dr.

hentsigm ID: 06CA9482-24BE-4C73-8BB2-6ED809F2591F

Date: *September 8, 2022*

Property Address: *815 Sunset Dr. Antioch, CA  94509-2860*

B. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller shall Sign and return Escrow Holder's general provisions or supplemental instructions within the time specified in paragraph 3N(2). Buyer and Seller shall execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within 3 Days, shall pay to Escrow Holder or OA or OA management company or others any fee required by **paragraphs 3, 8, 10, 11,** or elsewhere in this Agreement.

C. A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** after Acceptance. Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title Company when received from Seller, if a separate company is providing title insurance. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under **paragraph 11A**, Escrow Holder shall deliver to Buyer, Buyer's Agent, and Seller's Agent a Qualified Substitute statement that complies with federal Law. If Escrow Holder's Qualified Substitute statement does not comply with federal law, the Parties instruct escrow to withhold all applicable required amounts under **paragraph 11A**.

D. Agents are not a party to the escrow except for the sole purpose of receiving compensation pursuant to **paragraph 21A** and paragraph 3 of the Real Estate Brokers Section. If a Copy of the separate compensation agreement(s) provided for in either of those paragraphs is deposited with Escrow Holder by Agent, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s).Buyer and Seller irrevocably assign to Brokers compensation specified in **paragraph 21A**, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

E. Buyer and Seller acknowledge that Escrow Holder may require invoices for expenses under this Agreement. Buyer and Seller, upon request by Escrow Holder, within **3 Days** or within a sufficient time to close escrow, whichever is sooner, shall provide any such invoices to Escrow Holder.

F. Upon receipt, Escrow Holder shall provide Buyer, Seller, and each Agent verification of Buyer's deposit of funds pursuant to paragraph **5A(1) and 5A(2)**. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify each Agent: (i) if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

G. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3 Days** after mutual execution of the amendment.

23. **SELECTION OF SERVICE PROVIDERS:** Agents do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Agent or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

24. **MULTIPLE LISTING SERVICE ("MLS"):** Agents are authorized to report to the MLS that an offer has been accepted and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS. Buyer acknowledges that: (i) any pictures, videos, floor plans (collectively, "Images") or other information about the Property that has been or will be inputted into the MLS or internet portals, or both, at the instruction of Seller or in compliance with MLS rules, will not be removed after Close Of Escrow; (ii) California Civil Code § 1088(c) requires the MLS to maintain such Images and information for at least three years and as a result they may be displayed or circulated on the Internet, which cannot be controlled or removed by Seller or Agents; and (iii) Seller, Seller's Agent, Buyer's Agent, and MLS have no obligation or ability to remove such images or information from the Internet.

25. **ATTORNEY FEES AND COSTS:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 37A.

26. **ASSIGNMENT:** Buyer shall have the right to assign all of Buyer's interest in this Agreement to Buyer's own trust or to any wholly owned entity of Buyer that is in existence at the time of such assignment. Otherwise, Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Prior to any assignment, Buyer shall disclose to Seller the name of the assignee and the amount of any monetary consideration between Buyer and assignee. Buyer shall provide assignee with all documents related to this Agreement including, but not limited to, the Agreement and any disclosures. If assignee is a wholly owned entity or trust of Buyer, that assignee does not need to re-sign or initial all documents provided, Whether or not an assignment requires seller's consent, at the time of assignment, assignee shall deliver a letter from assignee's lender that assignee is prequalified or preapproved as specified in **paragraph 6B**. Should assignee fail to deliver such a letter, Seller, after first giving Assignee an Notice to Buyer to Perform, shall have the right to terminate the assignment. Buyer shall, within the time specified in **paragraph 3K**, Deliver any request to assign this Agreement for Seller's consent. If Buyer fails to provide the required information within this time frame, Seller's withholding of consent shall be deemed reasonable. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless Otherwise Agreed by Seller (C.A.R. Form AOAA).

27. **SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon, and inure to the benefit of, Buyer and Seller and their respective successors and assigns, except as otherwise provided herein.

28. **ENVIRONMENTAL HAZARD CONSULTATION:** Buyer and Seller acknowledge: (i) Federal, state, and local legislation impose liability upon existing and former owners and users of real property, in applicable situations, for certain legislatively defined, environmentally hazardous substances; (ii) Agent(s) has/have made no representation concerning the applicability of any such Law to this transaction or to Buyer or to Seller, except as otherwise indicated in this Agreement; (iii) Agent(s) has/have made no representation concerning the existence, testing, discovery, location and evaluation offer, and risks posed by; environmentally hazardous substances, if any, located on or potentially affecting the Property; and (iv) Buyer and Seller are each advised to consult with technical and legal experts concerning the existence, testing, discover, location and evaluation offor, and risks posed by, environmentally hazardous substances, in any, located on or potentially affecting the Property.

CPA REVISED 6/22 (PAGE 12 OF 17)          Buyer's Initials [WG]          Seller's Initials [WDES]

**COMMERCIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (CPA PAGE 12 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   815 Sunset Dr.

DocuSign ID: 06CA3482-24BE-4C73-8BB2-6ED808E2631F

Property Address: *815 Sunset Dr. Antioch, CA 94509-2860*　　　　　　　　　　Date: *September 8, 2022*

29. **AMERICANS WITH DISABILITIES ACT:** The Americans With Disabilities Act ("ADA") prohibits discrimination against individuals with disabilities. The ADA affects almost all commercial facilities and public accommodations. Residential properties are not typically covered by the ADA, but may be governed by its provisions if used for certain purposes. The ADA can require, among other things, that building be made readily accessible to the disabled. Different requirements apply to new construction, alterations to existing buildings, and removal of barriers in existing buildings. Compliance with the ADA may require significant costs. Monetary and injunctive remedies may be incurred if the Property is not in compliance. A real estate broker or agent does not have the technical expertise to determine whether a building is in compliance with ADA requirements, or to advise a principal on those requirements. Buyer and Seller are advised to contact a qualified California real estate attorney, contractor, architect, engineer, or other qualified professional of Buyer or Seller's own choosing to determine to what degree, if any, the ADA impacts that principal or this transaction.

30. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

31. **COPIES:** Seller and buyer each represent that Copies of all reports, certificates, approvals, and other documents that are furnished to the other are true, correct and unaltered Copies of the original documents, if the originals are in the possession of the furnishing party.

32. **DEFINITIONS and INSTRUCTIONS:** The following words are defined terms in this Agreement, shall be indicated by initial capital letters throughout this Agreement and have the following meaning whenever used:
    A. "Acceptance" means the time the offer or final counter offer is fully executed, in writing, by the recipient Party and is Delivered to the offering Party or that Party's Authorized Agent.
    B. "Agent" means the Broker, salesperson, broker-associate or any other real estate licensee licensed under the brokerage firm identified in paragraph 2B.
    C. "Agreement" means this document and any counter offers and any incorporated addenda or amendments, collectively forming the binding agreement between the Parties. Addenda and amendments are incorporated only when Signed and Delivered by all Parties.
    D. "As-Is" condition: Seller shall disclose known material facts and defects as specified in this Agreement. Buyer has the right to inspect the Property and, within the time specified, request that Seller make repairs or take other corrective action, or exercise any contingency cancellation rights in this Agreement. Seller is only required to make repairs specified in this Agreement or as Otherwise Agreed.
    E. "Authorized Agent" means an individual real estate licensee specified in the Real Estate Broker Section.
    F. "C.A.R. Form" means the most current version of the specific form referenced or another comparable form agreed to by the Parties.
    G. "Close Of Escrow", including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded for any real property, or the date of Delivery of a document evidencing the transfer of title for any non-real property transaction.
    H. "Copy" means copy by any means including photocopy, facsimile and electronic.
    I. Counting Days is done as follows unless Otherwise Agreed: (1) The first Day after an event is the first full calendar date following the event, and ending at 11:59 pm. For example, if a Notice to Buyer to Perform (C.A.R. form NBP) is Delivered at 3 pm on the 7th calendar day of the month, or Acceptance of a counter offer is personally received at 12 noon on the 7th calendar day of the month, then the 7th is Day "0" for purposes of counting days to respond to the NBP or calculating the Close Of Escrow date or contingency removal dates and the 8th of the month is Day 1 for those same purposes. (2) All calendar days are counted in establishing the first Day after an event. (3) All calendar days are counted in determining the date upon which performance must be completed, ending at 11:59 pm on the last day for performance ("Scheduled Performance Day"). (4) After Acceptance, if the Scheduled Performance Day for any act required by this Agreement, including Close Of Escrow, lands on a Saturday, Sunday, or legal holiday, the performing party shall be allowed to perform on the next day that is not a Saturday, Sunday or legal holiday ("Allowable Performance Day"), and ending at 11:59 pm. (5) For the purposes of COE, any day that the Recorder's office in the County where the Property is located is closed, the COE shall occur on the next day the Recorder's office in that County is open. (6) COE is considered Day 0 for purposes of counting days Seller is allowed to remain in possession, if permitted by this Agreement.
    J. "Day" or "Days" means calendar day or days. However, delivery of deposit to escrow is based on business days.
    K. "Deliver", "Delivered" or "Delivery" of documents, unless Otherwise Agreed, means and shall be effective upon personal receipt of the document by Buyer or Seller or their Authorized Agent. Personal receipt means (i) a Copy of the document, or as applicable, link to the document, is in the possession of the Party or Authorized Agent, regardless of the Delivery method used (i.e. e-mail, text, other), or (ii) an electronic Copy of the document, or as applicable, link to the document, has been sent to any of the designated electronic delivery addresses specified in the Real Estate Broker Section on page 16. After Acceptance, Agent may change the designated electronic delivery address for that Agent by, in writing, Delivering notice of the change in designated electronic delivery address to the other Party. Links could be, for example, to DropBox or GoogleDrive or other functionally equivalent program. If the recipient of a link is unable or unwilling to open the link or download the documents or otherwise prefers Delivery of the documents directly, Recipient of a link shall notify the sender in writing, within **3 Days** after Delivery of the link (C.A.R. Form RFR). In such case, Delivery shall be effective upon Delivery of the documents and not the link. Failure to notify sender within the time specified above shall be deemed consent to receive, and Buyer opening, the document by link.
    L. "Electronic Copy" or "Electronic Signature" means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.
    M. "Law" means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
    N. "Legally Authorized Signer" means an individual who has authority to Sign for the principal as specified in paragraph 39 or paragraph 40.
    O. "Otherwise Agreed" means an agreement in writing, signed by both Parties and Delivered to each.
    P. "Repairs" means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
    Q. "Sign" or "Signed" means either a handwritten or Electronic Signature on an original document, Copy or any counterpart.

CPA REVISED 6/22 (PAGE 13 OF 17)　　　　　　　Buyer's Initials [WG] / ___　　　Seller's Initials [___] / ___

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201　www.lwolf.com　　815 Sunset Dr.

DocuSign ID: 04CA9482-2486-4C73-8BB2-6E0809E2601F

Date: September 8, 2022

Property Address: *815 Sunset Dr, Antioch, CA  94509-2860*

33. **TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the terms and conditions herein. The Individual Liquidated Damages and Arbitration of Disputes paragraphs are incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a Counter Offer or addendum. **If at least one but not all Parties initial, a Counter Offer is required until agreement is reached.** Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance and to market the Property for backup offers after Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing. By signing this offer or any document in the transaction, the Party Signing the document is deemed to have read the document in its entirety.

34. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as Otherwise Agreed, this Agreement shall be interpreted, and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

35. **LEGALLY AUTHORIZED SIGNER:** Wherever the signature or initials of the Legally Authorized Signer identified in paragraph 39 or 40 appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Legally Authorized Signer (i) represents that the entity for which that person is acting already exists and is in good standing to do business in California and (ii) shall Deliver to the other Party and Escrow Holder, within as specified in paragraph 3N(5), evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

Buyer's Initials WG / _____     Seller's Initials WJTOJ / _____



**COMMERCIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (CPA PAGE 14 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com          815 Sunset Dr.

DocuSign ID: 06CA9482-24BE-4C73-8B82-6E0309F2601F
Property Address: *815 Sunset Dr, Antioch, CA  94509-2360*                                    Date: *September 8, 2022*

**36. LIQUIDATED DAMAGES:**
If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. Buyer and Seller agree that this amount is a reasonable sum given that it is impractical or extremely difficult to establish the amount of damages that would actually be suffered by Seller in the event Buyer were to breach this Agreement. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM DID).

Buyer's Initials  *WG*  /                          Seller's Initials  *SD* / _____

**37. MEDIATION:**
A.  The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. The mediation shall be conducted through the C.A.R. Real Estate Mediation Center for Consumers (www.consumermediation.org) or through any other mediation provider or service mutually agreed to by the Parties. The Parties also agree to mediate any disputes or claims with Agents(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Agent. Mediation fees, if any, shall be divided equally among the Parties involved, and shall be recoverable under the prevailing party attorney fees clause. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.
B.  ADDITIONAL MEDIATION TERMS: (i) Exclusions from this mediation agreement are specified in paragraph 38B; (ii) The obligation to mediate does not preclude the right of either Party to seek a preservation of rights under paragraph 38C; and (iii) Agent's rights and obligations are further specified in paragraph 38D. These terms apply even if the Arbitration of Disputes paragraph is not initialed.

**38. ARBITRATION OF DISPUTES:**
A.  The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The arbitration shall be conducted through any arbitration provider or service mutually agreed to by the Parties, OR _____. The Parties also agree
☐ to arbitrate any disputes or claims with Agents(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Agent. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of transactional real estate Law experience, unless the Parties mutually agree to a different arbitrator. Enforcement of, and any motion to compel arbitration pursuant to, this agreement to arbitrate shall be governed by the procedural rules of the Federal Arbitration Act, and not the California Arbitration Act, notwithstanding any language seemingly to the contrary in this Agreement. The Parties shall have the right to discovery in accordance with Code of Civil Procedure § 1283.05. The arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction.
B.  EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) Any matter that is within the jurisdiction of a probate, small claims or bankruptcy court; (ii) an unlawful detainer action; and (iii) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code § 2985.
C.  PRESERVATION OF ACTIONS: The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.
D.  AGENTS: Agents shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Agents(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.
E.  "NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

Buyer's Initials  *WG*  /                          Seller's Initials  *SD* / _____

CPA REVISED 6/22 (PAGE 15 OF 17)          Buyer's Initials  *WG*  / _____          Seller's Initials  *SD* / _____



**COMMERCIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (CPA PAGE 15 OF 17)**
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com          815 Sunset Dr.

DocuSign ID: 00CA5452-2A5E-4C73-8EB2-6ED809F26D1F

Property Address: 815 Sunset Dr, Antioch, CA  94509-2860        Date: September 8, 2022

**39. OFFER**

**A.   EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless by the date and time specified in paragraph 3C, the offer is Signed by Seller and a Copy of the Signed offer is Delivered to Buyer or Buyer's Authorized Agent. Seller has no obligation to respond to an offer made.

**B.** [X] **ENTITY BUYERS:** (**Note:** If this paragraph is completed, a Representative Capacity Signature Disclosure (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)

   (1)  One or more Buyers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or [ ] other entity.

   (2)  This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See paragraph 35 for additional terms.

   (3)  The name(s) of the Legally Authorized Signer(s) is/are:  ___WILL GODWIN-AUSTEN___

   (4)  If a trust, identify Buyer as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust). If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #: _____

**C.**   The CPA has 17 pages. Buyer acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

**D.   BUYER SIGNATURE(S):**

(Signature) By,  _Authorized_  _____     Date: 09/09/2022

           (WILL GODWIN-AUSTEN)

Printed name of BUYER  **NORTHWEST BUILDING LLC.** _____

[X] Printed Name of Legally Authorized Signer:  ___WILL GODWIN-AUSTEN___  Title, if applicable, _____ Date: _____

(Signature) By, _____     Date: _____

Printed name of BUYER: _____

[ ] Printed Name of Legally Authorized Signer: _____  Title, if applicable, _____

[ ] IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

**40. ACCEPTANCE**

**A.   ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property or has the authority to execute this Agreement. Seller accepts the above offer and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement and authorizes Agent to Deliver a Signed Copy to Buyer.

    Seller's acceptance is subject to the attached Counter Offer or Back-Up Offer Addendum, or both, checked below. Seller shall return and include the entire agreement with any response.

   [X] Seller Counter Offer (C.A.R. Form SCO or SMCO)

   [ ] Back-Up Offer Addendum (C.A.R. Form BUO)

**B.** [ ] **Entity Sellers:** (**Note:** If this paragraph is completed, a Representative Capacity Signature Disclosure form (C.A.R. Form RCSD) is not required for the Legally Authorized Signers designated below.)

   (1)  One or more Sellers is a trust, corporation, LLC, probate estate, partnership, holding a power of attorney or other entity.

   (2)  This Agreement is being Signed by a Legally Authorized Signer in a representative capacity and not in an individual capacity. See paragraph 35 for additional terms.

   (3)  The name(s) of the Legally Authorized Signer(s) is/are: _____

   (4)  If a trust, identify Seller as trustee(s) of the trust or by simplified trust name (ex. John Doe, co-trustee, Jane Doe, co-trustee or Doe Revocable Family Trust). If the entity is a trust or under probate, the following is the full name of the trust or probate case, including case #: _____

**C.**   The CPA has 17 pages. Seller acknowledges receipt of, and has read and understands, every page and all attachments that make up the Agreement.

**D.   SELLER SIGNATURE(S):**

(Signature) By, _____ _Trustee_ _____     Date: 9/12/22

Printed name of SELLER: _____

[ ] Printed Name of Legally Authorized Signer: _____  Title, if applicable, _____

(Signature) By, _____     Date: _____

Printed name of SELLER: _____

[ ] Printed Name of Legally Authorized Signer: _____  Title, if applicable, _____

[ ] IF MORE THAN TWO SIGNERS, USE Additional Signature Addendum (C.A.R. Form ASA).

---

OFFER NOT ACCEPTED: ____/____  No Counter Offer is being made. This offer was not accepted by Seller _____ (date)
      Seller's Initials

---

CPA REVISED 6/22 (PAGE 16 OF 17)     Buyer's Initials  WG /     Seller's Initials ___ ___

**COMMERCIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (CPA PAGE 16 OF 17)**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com    815 Sunset Dr.

Authentisign ID: 6B788822-BE81-4A6F-9482-C9A17B24545A
Authentisign ID: 66C8A4E2-243E-4C73-8B82-E9D369F260FF
Property Address: 815 Sunset Dr. Antioch, CA. 94509-2860                    Date: September 8, 2022

REAL ESTATE BROKERS SECTION:
1.  Real Estate Agents are not parties to the Agreement between Buyer and Seller.
2.  Agency relationships are confirmed as stated in paragraph 2.
3.  Cooperating Broker Compensation: Seller's Broker agrees to pay Buyer's Broker and Buyer's Broker agrees to accept, out of Seller's Broker's proceeds in escrow, the amount specified in the MLS, provided Buyer's Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Seller's Broker and Buyer's Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.
4.  Presentation of Offer: Pursuant to the National Association of REALTORS® Standard of Practice 1-7, if Buyer's Agent makes a written request, Seller's Agent shall confirm in writing that this offer has been presented to Seller.
5.  Agents' Signatures and designated electronic delivery address:

A.  Buyer's Brokerage Firm FIRST REPUBLIC REAL ESTATE, INC.                 Lic. # 01902148
    By LOURDES VALENCIA          LOURDES VALENCIA Lic. # 01290791          Date 09/15/2022
       9/15/2022 8:25:08 PM GMT
    By _____ Lic. # _____          Date _____
    ☐ More than one agent from the same firm represents Buyer. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
    ☐ More than one brokerage firm represents Buyer. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.
    Designated Electronic Delivery Address(es):
    Email _____          Text # _____
    Alternate: _____
    ☐ If checked, Delivery shall be made to the alternate designated electronic delivery address only.
    Address _____          City _____          State _____   Zip _____

B.  Seller's Brokerage Firm FIRST REPUBLIC REAL ESTATE, INC.                 Lic. # 01902148
    By _____ RAY (JIMMY) SMITH Lic. # _____   Date 9/12/2022
    By _____ Lic. # _____          Date _____
    ☐ More than one agent from the same firm represents Seller. Additional Agent Acknowledgement (C.A.R. Form AAA) attached.
    ☐ More than one brokerage firm represents Seller. Additional Broker Acknowledgement (C.A.R. Form ABA) attached.
    Designated Electronic Delivery Address(es) (To be filled out by Seller's Agent):
    Email _____          Text # _____
    Alternate: _____
    ☐ If checked, Delivery shall be made to the alternate designated electronic delivery address only.
    Address 5054 el portal drive suite c          City El Sobrante          State CA   Zip 94563

ESCROW HOLDER ACKNOWLEDGMENT:
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ), Counter Offer numbers _____ and _____, and agrees to act as Escrow Holder subject to paragraph 22 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.
Escrow Holder is advised by _____ that the date of Acceptance of the Agreement is _____
Escrow Holder First American Title/WC          Escrow # _____
By _____          Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Financial Protection and Innovation, ☐ Department of Insurance, ☐ Department of Real Estate.

PRESENTATION OF OFFER: ____/____ Seller's Brokerage Firm presented this offer to Seller on _____ (date).
                        Broker or Designee Initials

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

CPA REVISED 6/22 (PAGE 17 OF 17)          Buyer's Initials WG          Seller's Initials ____

COMMERCIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS (CPA PAGE 17 OF 17)



CALIFORNIA
ASSOCIATION
OF REALTORS®

**SELLER COUNTER OFFER No.** _1_
May not be used as a multiple counter offer.
(C.A.R. Form SCO, Revised 12/21)

Date _09/12/2022_

This is a counter offer to the Purchase Agreement, OR ☐ Buyer Counter Offer No. _____ , ☐ Other _____ ("Offer"),
dated _09/08/2022_, on property known as _____815 Sunset Dr, Antioch, CA 94509-2860_____ ("Property"),
between _____Northwest Building, LLC_____ ("Buyer"),
and _____Dora Dog Properties, LLC , W.D. Gieseke, US Bankruptcy Trustee_____ ("Seller"),
Buyer and Seller are referred to as the "Parties."

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
   A. The Liquidated Damages and Arbitration of Disputes paragraphs in the Offer each require initials by all Parties. If
      either of those paragraphs is not initialed by all Parties, that paragraph is excluded from the final agreement unless
      specifically referenced for inclusion in paragraph 1C of this or another Counter Offer or an addendum.
   B. Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in
      the original Offer, but initial and increased deposit amount(s) shall remain unchanged from the original Offer.
   C. OTHER TERMS:
      _1. 815 Sunset Drive, Antioch, California  APN :068-100-044-4_

      _PLEASE SEE ATTACHED COUNTER OFFER ADDENDUMS 1 and 2._

   D. The following attached documents are incorporated into this Seller Counter Offer when Signed and Delivered by both Parties
      (if both parties do not Sign and Deliver all attached addenda, then any acceptance of this Seller Counter Offer is not valid):
      ☒ Addendum No. _____ (C.A.R. Form ADM)
      ☐ Back Up Offer Addendum (C.A.R. Form BUO)
      ☐ Seller License to Remain in Possession Addendum (C.A.R. Form SIP) (occupancy up to 29 days)
      ☐ Seller Purchase of Replacement Property (C.A.R. Form SPRP)
      ☐ Tenant Occupied Property Addendum (C.A.R. Form TOPA)
      ☐ Residential Lease After Sale (C.A.R. Form RLAS) (occupancy for 30 or more days)
      ☐ Seller Intent to Exchange Addendum (C.A.R. Form SXA)
      ☐ Other _____     ☐ Other _____

2. **EXPIRATION:** This Seller Counter Offer shall be deemed revoked and the deposits, if any, shall be returned:
   A. Unless by 5:00 PM on the third Day after the date this Seller Counter Offer is signed in paragraph 4 (if more than one signature
      then, the last signature  date)(or by _5:00_ ☐ AM/ ☒ PM on _09/12/2022_ (date) (i) it is signed in paragraph 5 by Buyer and
      (ii) a copy of the Signed Seller Counter Offer is Delivered to Seller or Seller's Authorized Agent.
   B. OR if Seller withdraws this Seller Counter Offer anytime prior to Buyer's Acceptance by communicating withdrawal to Buyer or
      Buyer's Agent (C.A.R. Form WOO may be used).
   C. OR if Seller accepts another offer prior to Buyer's Acceptance of this Seller Counter Offer.

3. **MARKETING TO OTHER BUYERS:** Seller has the right to continue to offer the Property for sale. Seller has the right to
   accept any other offer received, prior to Acceptance of this Counter Offer by Buyer as specified in 2A and 5. In such event,
   Seller is advised to withdraw this Seller Counter Offer before accepting another offer.

4. **OFFER:** SELLER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY.
   BY MAKING THIS COUNTER OFFER, ANY PREVIOUS OFFER OR COUNTER OFFER CAN NO LONGER BE ACCEPTED.
   The terms and conditions of those documents are incorporated into this Seller Counter Offer unless Otherwise Agreed.
   Seller _____  Dora Dog Properties, LLC  Date _9/13/22_
   Seller _____  W. D. Gieseke, US Bankruptcy Trustee  Date _____

5. **ACCEPTANCE:** I/WE accept the above Seller Counter Offer (if checked ☒ SUBJECT TO THE ATTACHED BUYER COUNTER
   OFFER) and acknowledge receipt of a Copy.
   Buyer _____  Northwest Building, LLC  Date _9/14/22_
   Buyer _____  Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this
form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE
CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC
TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE,
CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California
Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by
members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

SCO Revised 12/21 (PAGE 1 OF 1)

**SELLER COUNTER OFFER (SCO PAGE 1 OF 1)**

Phone: |                          Fax:                     |$15 Sunset Dr
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

CALIFORNIA
ASSOCIATION
OF REALTORS®

**ADDENDUM No.** Counter 1 of 2
(C.A.R. Form ADM, Revised 12/21)

The following terms and conditions are hereby incorporated in and made a part of the Purchase Agreement, OR ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☒ Other *Commercial Purchase Agreement*
dated    *September 8, 2022* , on property known as    *815 Sunset Dr* ("Property/Premises),
                                                *Antioch, CA 94509-2860*
in which    *Northwest Building, LLC.* is referred to as ("Buyer/Tenant")
and    *Dora Dog Properties, LLC. , W. D. Gieseke, US Bankruptcy Trustee* is referred to as ("Seller/Landlord").
Buyer/Tenant and Seller/Landlord are referred to as the "Parties:"

*1. The Property shall Be Sold As-Is and Where-Is.*
*2. The Buyer(s) shall deposit $250,000.00 in earnest money within two business days after acceptance into escrow at First*
*American Title Company located at 1850 Mt Diablo Blvd., Suite 530, Walnut Creek, CA 94596 Escrow Number*
*NCS-1139881-CC Escrow Officer Angi Mosteller 925.927.2167.*
*3. The earnest money deposit shall be NON-REFUNDABLE after the Buyer(s) releases their Inspection contingency, if any.*
*Unless there is an overbid at the court confirmation hearing and the Buyer(s) offer is not confirmed, in which the deposit will*
*be fully released back to the Buyer(s) in 72 hours.*
*4. The purchase contract will require Federal Bankruptcy Court confirmation which will be ordered five days after the Buyer's*
*earnest deposit is received by the Title Company. The Buyer(s) will have a minimum of 15 days to complete the transaction*
*ONCE the Judge signs off on the Order and or as stated in the purchase contract, whichever time period is the latter.*
*5. If there is an overbid at the court hearing, the successful buyer's bidder's licensed real estate Broker shall be awarded the*
*sales commission at the close of escrow...*
*6 The Property is sold under the rules, regulations, and procedures of Section 363(b)(1) of the Federal Bankruptcy Code.*
*7. All personal property under the control of the US TRUSTEE is included in the sale.*
*8. All State and Federal Point of Sale mandates shall be handled at the expense of the Buyers. The property is SOLD As-Is.*
*9. Seller, the US TRUSTEE, will not be providing any disclosures due to Federal Bankruptcy Court code...*
*10. As a condition, the Buyer(s) and their agent / broker agree to sign a declaration that they are not friends or had, or have*
*any personal and or business dealings with Mr. and Mrs. Carpoff, their family, and or relatives and or DC Solar, Inc., and or its*
*affiliated companies that may cause a conflict of interest in this sale...*
*11. The Buyer is to assume the lease term of the Bay Alarm burglary alarm system and bay alarm camera system that expire*
*2025. ( Security alarm monthly $65.00). Camera System monthly $175.00 )*
*12. The Buyer is to assume the liability of all the units that are vacant, rented, paying and or not paying.*
*13. The Buyer agrees to change all the inspection periods to  30 days.*

*CONTINUED ON PAGE 2 of 2*

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this Addendum.

Buyer/Tenant    _[signature]_                                    Date  9/14/22
                *Northwest Building, LLC.*

Buyer/Tenant    _____                        Date _____

Seller/Landlord  _[signature]_ Trustee                          Date 9/12/22
                *Dora Dog Properties, LLC.*

Seller/Landlord  _____                       Date _____

                *W. D. Gieseke, US Bankruptcy Trustee*

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

ADM REVISED 12/21 (PAGE 1 OF 1)

**ADDENDUM (ADM PAGE 1 OF 1)**

CALIFORNIA
ASSOCIATION
OF REALTORS®

**ADDENDUM No.** *Counter 2 of 2*
(C.A.R. Form ADM, Revised 12/21)

The following terms and conditions are hereby incorporated in and made a part of the Purchase Agreement, OR ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☒ Other *Commercial Purchase Agreement*
dated ____September 8, 2022____ , on property known as ____815 Sunset Dr____ ("Property/Premises"),
____Antioch, CA  94509-2850____
in which ____Northwest Building, LLC.____ is referred to as ("Buyer/Tenant")
and ____Dora Dog Properties, LLC. , W.D. Gieseke, US Bankruptcy Trustee____ is referred to as ("Seller/Landlord").
Buyer/Tenant and Seller/Landlord are referred to as the "Parties."

14. The Close of Escrow shall be 15 days after the court confirms the SALE.

15. Item 3.Q11 (City Transfer Fees) shall be removed from the contact. Antioch does not assess City Transfer fees on a sale.

16: The Buyer(s) has read and approved the Management summaries, Cover letter to the reports and Rent roll reports and the Offering memorandum.

17. The night time resident in the apartment shall be allowed to reside in the unit through December 31, 2022 at no charge. This includes one storage unit the resident occupies. On January 1, 2023 the tenant agrees to pay a monthly rental amount of $1,650.00 without any night time duties.

18. All operational mini storage portals with Sitelink, a website, SEO website services which are month to month shall be assigned over to the buyer upon the close of escrow.

19. The Buyer as been appointed as Stocking Horse in this transaction.

20. The Buyer's Agent / Broker will be paid 2% commission of the sales price as the cooperating agent as stated in the court order.

21. Item3 D2 Increased deposit shall be deleted from the contract.

21. All other terms and conditions shall remain the same.

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this Addendum.

Buyer/Tenant _____ Date _9/15/22_
*Northwest Building, LLC.*

Buyer/Tenant _____ Date _____

Seller/Landlord _____ Date _9/15/22_
*Dora Dog Properties, LLC.*

Seller/Landlord _____ Date _____
*W. D. Gieseke, US Bankruptcy Trustee*

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display, and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

ADM REVISED 12/21 (PAGE 1 OF 1)

**ADDENDUM (ADM PAGE 1 OF 1)**



# BUYER COUNTER OFFER No. __1__
(C.A.R. Form BCO, Revised 12/21)

Date __September 13, 2022__

This is a counter offer to the Seller Counter Offer No. __1__, OR ☐ Seller Multiple Counter Offer No. ___, ☐ Other _____
_____ ("Offer"),
dated __September 12, 2022__, on property known as _____ 815 Sunset Dr, Antioch, CA 94509-2860 _____ ("Property"),
between _____ NORTHWEST BUILDING LLC. _____ ("Buyer")
and _____ Dora Dog Properties, LLC.., W.D. Gieseke, US Bankrupctcy Trustee _____ ("Seller").
Buyer and Seller are referred to as the "Parties."

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
   A. **The Liquidated Damages and Arbitration of Disputes paragraphs in the Offer each require initials by all Parties. If either of those paragraphs is not initialed by all Parties, that paragraph is excluded from the final Agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer or an addendum.**
   B. **Unless Otherwise Agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer, but deposit amount(s) shall remain unchanged from the original Offer.**
   C. **OTHER TERMS:**
      _PLEASE SEE COUNTER OFFER ADDENDUM 3_
      _____
      _____
      _____
      _____
      _____
      _____
      _____
      _____
      _____
   D. The following attached addenda are incorporated into this Buyer Counter Offer only when Signed by both Parties (if both Parties do not Sign and Deliver all attached addenda then any acceptance of this Buyer Counter Offer is not valid):
      ☒ Addendum No. _3_____                                    ☐ _____

2. **EXPIRATION:** This Buyer Counter Offer shall be deemed revoked and the deposits, if any, shall be returned:
   A. Unless by 5:00 PM on the third Day after the date this Buyer Counter Offer is signed in paragraph 3 (if more than one signature then, the last signature date)(or ☒ by _12:00_ ☐ AM/☒ PM on _09/15/2022_ (date)) (i) it is Signed in paragraph 4 by Seller and (ii) a copy of the Signed Buyer Counteroffer is Delivered to Buyer or Buyer's Authorized Agent.
   B. OR If Buyer withdraws this Buyer Counter Offer anytime prior to Seller's Acceptance by communicating withdrawal to Seller or Seller's Agent. (C.A.R. Form WOO may be used).

3. **OFFER: BUYER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY. BY MAKING THIS COUNTER OFFER, ANY PREVIOUS OFFER OR COUNTER OFFER CAN NO LONGER BE ACCEPTED.** The terms and conditions of those documents are incorporated into this Buyer Counter Offer unless Otherwise Agreed.
   Buyer _____(signature)_____                          NORTHWEST BUILDING LLC. Date _7/13/22_
   Buyer _____                                    Date _____

4. **ACCEPTANCE: I/WE** accept the above Buyer Counter Offer and all Signed Addenda, if any, (if checked ☐ **SUBJECT TO THE ATTACHED SELLER COUNTER OFFER No. _____ OR SELLER MULTIPLE COUNTER OFFER No. _____**) and acknowledge receipt of a Copy.
   Seller _____(signature) Trustee_____                Dora Dog Properties, LLC. Date _9/15/22_
   Seller _____    W.D. Gieseke, US Bankrupctcy Trustee Date _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

BCO REVISED 12/21 (PAGE 1 OF 1)

## BUYER COUNTER OFFER (BCO PAGE 1 OF 1)





CALIFORNIA
ASSOCIATION
OF REALTORS®

**ADDENDUM No.** *Buyer's Counter*
(C.A.R. Form ADM, Revised 12/21)

The following terms and conditions are hereby incorporated in and made a part of the Purchase Agreement, OR ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☐ Other _____
dated      *September 8, 2022*      , on property known as _____ *815 Sunset Dr*
                *Antioch, CA  94509-2860*                                    ("Property/Premises"),
in which                 *NORTHWEST BUILDING LLC.*                     is referred to as ("Buyer/Tenant")
and          *Dora Dog Properties, LLC.,, W.D. Gieseke, US Bankrupctcy Trustee*      is referred to as ("Seller/Landlord").
Buyer/Tenant and Seller/Landlord are referred to as the "Parties."
*1. The close of escrow shall be 15 days after the court confirms the SALE.  The earliest court confirmation date shall be*
*October 28, 2022.*

*2. The tenant's occupancy after December 31, 2022, will require Buyer's approval of the rental terms which shall be at the*
*Buyer's discretion.*

*3. Seller confirms that tenant does not have a rental agreement that extends beyond December 31, 2022.*

*4.  The Buyer agrees to be appointed Stalking Horse for the actual out of pocket expenses up to the amount of $50,000.00.*
*The actual out of pocket expenses will be credited to the purchase price in escrow. If the Buyer is not the successful bidder*
*at the confirmation hearing, the Buyer will be reimbursed by the Seller, the actual out of pocket expenses within 30 days of*
*the Buyer submitting an invoice with supporting documents to the Listing Agent, Jimmy.*

*5. Expiration of Seller's counter offer 1 to be extended to 12:00 pm on 9/15/2022 .*

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this Addendum.

Buyer/Tenant _____    Date  9/15/22
          *NORTHWEST BUILDING LLC.*

Buyer/Tenant _____    Date _____

Seller/Landlord _____ Trustee _____    Date  9/15/22
          *Dora Dog Properties, LLC.,*

Seller/Landlord _____    Date _____

          *W.D. Gieseke, US Bankrupctcy Trustee*

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

ADM REVISED 12/21 (PAGE 1 OF 1)

**ADDENDUM (ADM PAGE 1 OF 1)**

DocuSign ID: 60CA8A42-64BB-4C70-88B7-6EDB33523917

# BUYER'S INVESTIGATION ADVISORY
(C.A.R. Form BIA, Revised 12/21)

CALIFORNIA
ASSOCIATION
OF REALTORS®

Property Address *815 Sunset Dr. Antioch, CA  94509-2860*

1. **IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

2. **BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to professionals, Broker does not guarantee their performance.

3. **YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

   A. **GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and non-structural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.

   B. **SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.

   C. **WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.

   D. **SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.

   E. **WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS; WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.

   F. **ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).

   G. **EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.

   H. **FIRE, HAZARD, AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies.

   I. **BUILDING PERMITS, ZONING, GOVERNMENTAL REQUIREMENTS, AND ADDRESS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size. Postal/mailing address and zip code may not accurately reflect the city which has jurisdiction over the property.

   J. **RENTAL PROPERTY RESTRICTIONS:** The State, some counties, and some cities impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.

   K. **SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

© 2021, California Association of REALTORS®, Inc.

BIA REVISED 12/21 (PAGE 1 OF 2)

**BUYER'S INVESTIGATION ADVISORY (BIA PAGE 1 OF 2)**

DocuSign ID: CDCA9437-24E6-4C73-8282-8ED349F5061F

**L.  NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

By signing below, Buyers acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyers are encouraged to read it carefully.

Buyer  _____  **NORTHWEST BUILDING LLC.** Date  09/09/2022

Buyer  _____  Date  _____

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



**BIA REVISED 12/21 (PAGE 2 OF 2)**

**BUYER'S INVESTIGATION ADVISORY (BIA PAGE 2 OF 2)**



# FAIR APPRAISAL ACT ADDENDUM
## (C.A.R. Form FAAA, 6/22)

The following terms and conditions are hereby incorporated in and made a part of the Purchase Agreement, OR ☐ Other
_____ ("Agreement"),
dated _____, on property known as _____815 Sunset Dr, Antioch, CA  94509-2860_____ ("Property"),
in which _____ is referred to as ("Seller")
and _____NORTHWEST BUILDING LLC._____ is referred to as ("Buyer").

Any appraisal of the property is required to be unbiased, objective, and not influenced by improper or illegal considerations, including, but not limited to, any of the following: race, color, religion (including religious dress, grooming practices, or both), gender (including, but not limited to, pregnancy, childbirth, breastfeeding, and related conditions, and gender identity and gender expression), sexual orientation, marital status, medical condition, military or veteran status, national origin (including language use and possession of a driver's license issued to persons unable to provide their presence in the United States is authorized under federal law), source of income, ancestry, disability (mental and physical, including, but not limited to, HIV/AIDS status, cancer diagnosis, and genetic characteristics), genetic information, or age.

If a buyer or seller believes that the appraisal has been influenced by any of the above factors, the seller or buyer can report this information to the lender or mortgage broker that retained the appraiser and may also file a complaint with the Bureau of Real Estate Appraisers at https://www2.brea.ca.gov/complaint/ or call (916) 552-9000 for further information on how to file a complaint.

By signing below, Buyer and Seller has each read, understands and acknowledges receipt of a copy of this Fair Appraisal Act Addendum.

Buyer _____ Date _03/09/2022_

Buyer _NORTHWEST BUILDING LLC._____ Date _____

Seller _____ Trustee Date _9/13/22_

Seller _____ Date _____

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

FAAA 6/22 (PAGE 1 OF 1)

## FAIR APPRAISAL ACT ADDENDUM (FAAA PAGE 1 OF 1)



# CALIFORNIA CONSUMER PRIVACY ACT ADVISORY, DISCLOSURE AND NOTICE
### (C.A.R. Form CCPA, Revised 12/21)

The California Consumer Privacy Act (commencing with Civil Code § 1798.100) ("CCPA") grants to California residents certain rights in their private, personal information ("PI") that is collected by companies with whom they do business. Under the CCPA, PI is defined broadly to encompass non-public records information that could reasonably be linked directly or indirectly to you. PI could potentially include photographs of, or sales information about, your property.

During the process of buying and selling real estate your PI will be collected and likely shared with others, including real estate licensees, a Multiple Listing Service, real estate internet websites, service providers, lenders, and title and escrow companies, to name several possibilities. Businesses that are covered by the CCPA are required to grant you various rights in your PI, including the right to know what PI is collected, "opt out" or stop the transfer of your PI to others, and the right to request that the business delete your PI entirely. You may get one or more notices regarding your CCPA rights from businesses you interact with in a real estate transaction. However, not all businesses that receive or share your PI are obligated to comply with the CCPA. Also, even businesses that are otherwise covered under the CCPA may have a legal obligation to maintain PI, notwithstanding your instruction to the contrary. For instance, regardless of whether they are covered by CCPA, under California law, brokers and Multiple Listing Services are required to maintain their records for 3 years. If you wish to exercise your rights under CCPA, where applicable, you should contact the respective business directly.

You can obtain more information about the CCPA and your rights under the law from the State of California Department of Justice (oag.ca.gov/privacy/ccpa).

I/we acknowledge receipt of a copy of this California Consumer Privacy Act Advisory, Disclosure and Notice.

Buyer/Seller/Landlord/Tenant _____ Date 09/09/2022

*NORTHWEST BUILDING LLC.*

Buyer/Seller/Landlord/Tenant _____ *Trustee*  Date 9/12/22

© 2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



CCPA REVISED 12/21 (PAGE 1 OF 1)

## CALIFORNIA CONSUMER PRIVACY ACT ADVISORY (CCPA PAGE 1 OF 1)

handsign ID: 08CA9492-2456-4C73-8BB2-8ED808F2601F

# FAIR HOUSING AND DISCRIMINATION ADVISORY
### (C.A.R. Form FHDA, Revised 6/22)

1. **EQUAL ACCESS TO HOUSING FOR ALL:** All housing in California is available to all persons. Discrimination as noted below is prohibited by law. Resources are available for those who have experienced unequal treatment under the law.
2. **FEDERAL AND STATE LAWS PROHIBIT DISCRIMINATION AGAINST IDENTIFIED PROTECTED CLASSES:**
   A. FEDERAL FAIR HOUSING ACT ("FHA") Title VIII of the Civil Rights Act; 42 U.S.C. §§ 3601-3619; Prohibits discrimination in sales, rental or financing of residential housing against persons in protected classes;
   B. CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA") California Government Code ("GC") §§ 12900-12996,12955; 2 California Code of Regulations ("CCR") §§ 12005-12271; Prohibits discrimination in sales, rental or financing of housing opportunity against persons in protected classes by providers of housing accommodation and financial assistance services as related to housing;
   C. CALIFORNIA UNRUH CIVIL RIGHTS ACT ("Unruh") California Civil Code ("CC") § 51; Prohibits business establishments from discriminating against, and requires full and equal accommodation, advantages, facilities, privileges, and services to persons in protected classes;
   D. AMERICANS WITH DISABILITIES ACT ("ADA") 42 U.S.C. §§ 12181-12189; Title III of the ADA prohibits discrimination based on disability in public accommodations; and
   E. OTHER FAIR HOUSING LAWS: § 504 of Rehabilitation Act of 1973 29 U.S.C. § 794; Ralph Civil Rights Act CC § 51.7.; California Disabled Persons Act; CC §§ 54-55.32; any local city or county fair housing ordinances, as applicable.
3. **POTENTIAL LEGAL REMEDIES FOR UNLAWFUL DISCRIMINATION:** Violations of fair housing laws may result in monetary civil fines, injunctive relief, compensatory and/or punitive damages, and attorney fees and costs.
4. **PROTECTED CLASSES/CHARACTERISTICS:** Whether specified in Federal or State law or both, discrimination against persons if based on that person's belonging to, association with, or perceived membership in, certain classes or categories, such as the following, is prohibited. Other classes, categories or restrictions may also apply.

| Race | Color | Ancestry | National Origin | Religion |
|------|-------|----------|-----------------|----------|
| Age | Sex, Sexual Orientation | Gender, Gender Identity, Gender expression | Marital Status | Familial Status (family with a child or children under 18) |
| Citizenship | Immigration Status | Primary Language | Military/Veteran Status | Source of Income (e.g., Section 8 Voucher) |
| Medical Condition | Disability (Mental & Physical) | Genetic Information | Criminal History (non-relevant convictions) | Any arbitrary characteristic |

5. **THE CALIFORNIA DEPARTMENT OF REAL ESTATE REQUIRES TRAINING AND SUPERVISION TO PREVENT HOUSING DISCRIMINATION BY REAL ESTATE LICENSEES:**
   A. California Business & Professions Code ("B&PC") § 10170.5(a)(4) requires 3 hours of training on fair housing for DRE license renewal; Real Estate Regulation § 2725(f) requires brokers who oversee salespersons to be familiar with the requirements of federal and state laws relating to the prohibition of discrimination.
   B. Violation of DRE regulations or real estate laws against housing discrimination by a real estate licensee may result in the loss or suspension of the licensee's real estate license. B&PC §10177(i)(1); 10 CCR § 2780
6. **REALTOR® ORGANIZATIONS PROHIBIT DISCRIMINATION:** NAR Code of Ethics Article 10 prohibits discrimination in employment practices or in rendering real estate license services against any person because of race, color, religion, sex, handicap, familial status, national origin, sexual orientation, or gender identity by REALTORS®.
7. **WHO IS REQUIRED TO COMPLY WITH FAIR HOUSING LAWS?**
   Below is a non-exclusive list of providers of housing accommodations or financial assistance services as related to housing who are most likely to be encountered in a housing transaction and who must comply with fair housing laws.

   - Sellers
   - Real estate licensees
   - Mobilehome parks
   - Insurance companies
   - Landlords
   - Real estate brokerage firms
   - Homeowners Associations ("HOAs");
   - Government housing services
   - Sublessors
   - Property managers
   - Banks and Mortgage lenders
   - Appraisers

8. **EXAMPLES OF CONDUCT THAT MAY NOT BE MOTIVATED BY DISCRIMINATORY INTENT BUT COULD HAVE A DISCRIMINATORY EFFECT:**
   A. Prior to acceptance of an offer, asking for or offering buyer personal information or letters from the buyer, especially with photos. Those types of documents may inadvertently reveal, or be perceived as revealing, protected status information thereby increasing the risk of (I) actual or unconscious bias, and (ii) potential legal claims against sellers and others by prospective buyers whose offers were rejected.
   B. Refusing to rent (i) an upper-level unit to an elderly tenant out of concern for the tenant's ability to navigate stairs or (ii) a house with a pool to a person with young children out of concern for the children's safety.
9. **EXAMPLES OF UNLAWFUL OR IMPROPER CONDUCT BASED ON A PROTECTED CLASS OR CHARACTERISTIC:**
   A. Refusing to negotiate for a sale, rental or financing or otherwise make a housing opportunity unavailable; failing to present offers due to a person's protected status;
   B. Refusing or failing to show, rent, sell or finance housing; "channeling" or "steering" a prospective buyer or tenant to or away from a particular area due to that person's protected status or because of the racial, religious or ethnic composition of the neighborhood;
   C. "Blockbusting" or causing "panic selling" by inducing a listing, sale or rental based on the grounds of loss of value of property, increase in crime; or decline in school quality due to the entry or prospective entry of people in protected categories into the neighborhood;
   D. Making any statement or advertisement that indicates any preference, limitation, or discrimination;

© 2022, California Association of REALTORS®, Inc.
FHDA REVISED 6/22 (PAGE 1 OF 2)

**FAIR HOUSING AND DISCRIMINATION ADVISORY (FHDA PAGE 1 OF 2)**

characteristics (such as asking tenant applicants if they are married, or prospective purchasers if they have children or are planning to start a family);

F. Using criminal history information before otherwise affirming eligibility, and without a legally sufficient justification;

G. Failing to assess financial standards based on the portion of the income responsible by a tenant who receives government subsidies (such as basing an otherwise neutral rent to income ratio on the whole rent rather than just the part of rent that is the tenant's responsibility);

H. Denying a home loan or homeowner's insurance;

I. Offering inferior terms, conditions, privileges, facilities or services;

J. Using different qualification criteria or procedures for sale or rental of housing such as income standards, application requirements, application fees, credit analyses, sale or rental approval procedures or other requirements;

K. Harassing a person;

L. Taking an adverse action based on protected characteristics;

M. Refusing to permit a reasonable modification to the premises, as requested by a person with a disability (such as refusing to allow a wheelchair bound tenant to install, at their expense, a ramp over front or rear steps, or refusing to allow a physically disabled tenant from installing, at their own expense, grab bars in a shower or bathtub);

N. Refusing to make reasonable accommodation in policies, rules, practices, or services for a person with a disability (such as the following, if an actual or prospective tenant with a disability has a service animal or support animal):
   (i)   Failing to allow that person to keep the service animal or emotional support animal in rental property,
   (ii)  Charging that person higher rent or increased security deposit, or
   (iii) Failing to show rental or sale property to that person who is accompanied by the service animal or support animal, and;

O. Retaliating for asserting rights under fair housing laws.

10. EXAMPLES OF POSITIVE PRACTICES:
   A. Real estate licensees working with buyers or tenants should apply the same objective property selection criteria, such as location/neighborhood, property features, and price range and other considerations, to all prospects.
   B. Real estate licensees should provide complete and objective information to all clients based on the client's selection criteria.
   C. Real estate licensees should provide the same professional courtesy in responding to inquiries, sharing of information and offers of assistance to all clients and prospects.
   D. Housing providers should not make any statement or advertisement that directly or indirectly implies preference, limitation, or discrimination regarding any protected characteristic (such as "no children" or "English-speakers only").
   E. Housing providers should use a selection process relying on objective information about a prospective buyer's offer or tenant's application and not seek any information that may disclose any protected characteristics (such as using a summary document, e.g. C.A.R. Form SUM-MO, to compare multiple offers on objective terms).

11. FAIR HOUSING RESOURCES: If you have questions about your obligations or rights under the Fair Housing laws, or you think you have been discriminated against, you may want to contact one or more of the sources listed below to discuss what you can do about it, and whether the resource is able to assist you.
   A. Federal: https://www.hud.gov/program_offices/fair_housing_equal_opp
   B. State: https://www.dfeh.ca.gov/housing/
   C. Local: local Fair Housing Council office (non-profit, free service)
   D. DRE: https://www.dre.ca.gov/Consumers/FileComplaint.html
   E. Local Association of REALTORS®. List available at: https://www.car.org/en/contactus/rosters/localassociationroster.
   F. Any qualified California fair housing attorney, or if applicable, landlord-tenant attorney.

12. LIMITED EXCEPTIONS TO FAIR HOUSING REQUIREMENTS: No person should rely on any exception below without first seeking legal advice about whether the exception applies to their situation. Real estate licensees are not qualified to provide advice on the application of these exceptions.
   A. Legally compliant senior housing is exempt from FHA, FEHA and Unruh as related to age or familial status only;
   B. An owner of a single-family residence who resides at the property with one lodger may be exempt from FEHA for rental purposes, PROVIDED no real estate licensee is involved in the rental;
   C. An owner of a single-family residence may be exempt from FHA for sale or rental purposes, PROVIDED (i) no real estate licensee is involved in the sale or rental and (ii) no discriminatory advertising is used, and (iii) the owner owns no more than three single-family residences. Other restrictions apply;
   D. An owner of residential property with one to four units who resides at the property may be exempt from FHA for rental purposes, PROVIDED no real estate licensee is involved in the rental; and
   E. Both FHA and FEHA do not apply to roommate situations. See, Fair Housing Council v. Roommate.com LLC, 666 F.3d 1216 (2019).
   F. Since both the 14th Amendment of the U.S. Constitution and the Civil Rights Act of 1866 prohibit discrimination based on race, the FHA and FEHA exemptions do not extend to discrimination based on race.

Buyer/Tenant and Seller/Landlord have read, understand and acknowledge receipt of a copy of this Fair Housing & Discrimination Advisory.

Buyer/Tenant _____ **NORTHWEST BUILDING LLC.** Date 09/09/2022

Buyer/Tenant _____ Date _____

Seller/Landlord _____ Trustee Date 9/12/22

Seller/Landlord _____ Date _____

© 2022, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020



FHDA REVISED 6/22 (PAGE 2 OF 2)

**FAIR HOUSING AND DISCRIMINATION ADVISORY (FHDA PAGE 2 OF 2)**



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

# WIRE FRAUD AND ELECTRONIC FUNDS
## TRANSFER ADVISORY
(C.A.R. Form WFA, Revised 12/21)

Property Address: _815 Sunset Dr, Antioch, CA  94509-2860_ ("Property").

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFERS ADVISORY:

The ability to communicate and conduct business electronically is a convenience and reality in nearly all parts of our lives. At the same time, it has provided hackers and scammers new opportunities for their criminal activity. Many businesses have been victimized and the real estate business is no exception.

While wiring or electronically transferring funds is a welcome convenience, we all need to exercise extreme caution. Emails attempting to induce fraudulent wire transfers have been received and have appeared to be legitimate. Reports indicate that some hackers have been able to intercept emailed transfer instructions, obtain account information and, by altering some of the data, redirect the funds to a different account. It also appears that some hackers were able to provide false phone numbers for verifying the wiring or funds transfer instructions. In those cases, the victim called the number provided to confirm the instructions, and then unwittingly authorized a transfer to somewhere or someone other than the intended recipient.

## ACCORDINGLY, YOU ARE ADVISED:

1. Obtain phone numbers and account numbers only from Escrow Officers, Property Managers, or Landlords at the beginning of the transaction.
2. DO NOT EVER WIRE OR ELECTRONICALLY TRANSFER FUNDS PRIOR TO CALLING TO CONFIRM THE TRANSFER INSTRUCTIONS. ONLY USE A PHONE NUMBER YOU WERE PROVIDED PREVIOUSLY. Do not use any different phone number or account number included in any emailed transfer instructions.
3. Orally confirm the transfer instruction is legitimate and confirm the bank routing number, account numbers and other codes before taking steps to transfer the funds.
4. Avoid sending personal information in emails or texts. Provide such information in person or over the telephone directly to the Escrow Officer, Property Manager, or Landlord.
5. Take steps to secure the system you are using with your email account. These steps include creating strong passwords, using secure WiFi, and not using free services.

If you believe you have received questionable or suspicious wire or funds transfer instructions, immediately notify your bank, and the other party, and the Escrow Office, Landlord, or Property Manager. The sources below, as well as others, can also provide information:

Federal Bureau of Investigation: https://www.fbi.gov/; the FBI's IC3 at www.ic3.gov; or 310-477-6565

National White Collar Crime Center: http://www.nw3c.org/

On Guard Online: https://www.onguardonline.gov/

NOTE: There are existing alternatives to electronic and wired fund transfers such as cashier's checks. By signing below, the undersigned acknowledge that each has read, understands and has received a copy of this Wire Fraud and Electronic Funds Transfer Advisory.

Buyer/Tenant _____  *NORTHWEST BUILDING LLC.* Date _09/09/2022_

Buyer/Tenant _____ Date _____

Seller/Landlord _____ Trustee Date _9/12/22_

Seller/Landlord _____ Date _____

©2021, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

WFA REVISED 12/21 (PAGE 1 OF 1)

## WIRE FRAUD AND ELECTRONIC FUNDS TRANSFER ADVISORY (WFA PAGE 1 OF 1)